1   Susana B. Tolchard (Bar No. 219889)
    **Law Offices of Susana B. Tolchard**
2   25852 Mc Bean Parkway #209
    Valencia, CA 91355
3   Telephone: (661) 287-9986
    Facsimile: (661) 414-7117
4   susana@tolchardlaw.com

5   Attorney for Debtor
    Suzanne Frank Gerbasi
6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                     LOS ANGELES DIVISION

11

12   In re                          )   Case No. 2:10-bk-64548-PC
                                     )
13                                   )   Chapter 11
                                     )
14                                   )
                                     )   **DEBTOR'S DISCLOSURE STATEMENT**
15                                   )   **DESCRIBING DEBTOR'S CHAPTER 11**
                                     )   **PLAN**
16   SUZANNE FRANK GERBASI,          )
                                     )
17                                   )   **Disclosure Statement Hearing**
                                     )
18                                   )   Date:  June 29, 2011
                                     )   Time:  9:30 a.m.
19                       Debtor.     )   Place: 255 E. Temple Street
                                     )          Courtroom 1539
20                                   )          Los Angeles, CA 90012
                                     )
21                                   )
                                     )
22                                   )
                                     )
23                                   )

24

25

26

27

28

**Contents**

I. INTRODUCTION ........................................................................................................... 5

    A. PURPOSE OF THIS DOCUMENT ........................................................................ 5

    B. DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN
       CONFIRMATION HEARING .............................................................................. 6

    C. TIME AND PLACE OF THE CONFIRMATION HEARING ................................ 7

    D. DEADLINE FOR VOTING FOR OR AGAINST THE PLAN ................................ 7

    E. DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE
       PLAN ................................................................................................................... 7

    F. IDENTITY OF PERSON TO CONTACT FOR MORE
       INFORMATION REGARDING THE PLAN ........................................................ 7

    G. DISCLAIMER ...................................................................................................... 7

    H. IMPORTANT NOTICES AND CAUTIONARY STATEMENTS ........................... 8

II. BACKGROUND .......................................................................................................... 8

    A. DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS ..................... 8

    B. PRINCIPAL/AFFILIATES OF THE DEBTOR'S BUSINESS .............................. 9

    C. MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE
       BANKRUPTCY ..................................................................................................... 9

    D. EVENTS LEADING TO CHAPTER 11 FILING ................................................... 9

    E. SIGNIFICANT EVENTS DURING THE BANKRUPTCY .................................... 9

       *1. Bankruptcy Proceedings* ............................................................................. 9

       *2. Other Legal Proceedings* ........................................................................... 10

       *3. Claims Objections* ...................................................................................... 10

       *4. Adversary Proceedings* .............................................................................. 10

       *5. Actual and Projected Recovery of Preferential or Fraudulent
         Transfers* ..................................................................................................... 11

       *6. Procedures Implemented to Resolve Financial Problems* ............................ 11

       *7. Current and Historical Financial Conditions*                     11

**III.   SUMMARY OF THE PLAN OF REORGANIZATION**............................................ 11

    A.   GENERAL OVERVIEW ........................................................................ 11

    B.   UNCLASSIFIED CLAIMS...................................................................... 12

    C.   ADMINISTRATIVE EXPENSES ............................................................. 12

    D.   PRIORITY TAX CLAIMS ...................................................................... 13

    E.   CLASSIFIED CLAIMS AND INTERESTS................................................. 13

        **Class 1** - *Secured Claim of Zions First National Bank*............................. 13

        **Class 2** - *Secured Claim of Bay Area Financial Corporation* ................... 14

        **Class 3** – *Secured Claim of James Landon* ........................................... 14

        **Class 4** – *Secured Claim of the Los Angeles County Tax Assessor* ........ 15

        **Class 5** - *Secured Claim of OneWest Bank FSB* .................................. 15

        **Class 6** - *Secured Claim of Mercedes Benz Financial Services USA* ......... 15

        **Class 7** - *Priority Unsecured Claims* .................................................. 16

        **Class 8** - *Unsecured Claims* ............................................................... 16

        **Class 9** – Debtor ................................................................................ 16

    F.   MEANS OF PERFORMING THE PLAN ................................................... 17

        *1.   Funding for the Plan* ...................................................................... 17

        *2.  Management of The Reorganized Debtor* .......................................... 17

        *3.  Distributions* .................................................................................. 18

    G.   RISK FACTORS ................................................................................... 18

    H.   OTHER PROVISIONS OF THE PLAN ..................................................... 18

        1.   Executory Contracts and Unexpired Leases ..................................... 18

        2.   Changes in Rates Subject to Regulatory Commission Approval.................. 19

        3.   Retention of Jurisdiction. ................................................................ 19

    I.   TAX CONSEQUENCES OF THE PLAN.................................................... 20

**IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES**.......................... 20

    A.  WHO MAY VOTE OR OBJECT .............................................................. 21

        *1.   Who May Object to Confirmation of the Plan* ................................... 21

2.  *Who May Vote to Accept/Reject the Plan* ........................................................ 21

3.  *Who is Not Entitled to Vote* ............................................................................. 22

4.  *Who Can Vote in More Than One Class* ........................................................... 23

5.  *Votes Necessary to Confirm the Plan* ............................................................... 23

6.  *Votes Necessary for a Class to Accept the Plan* .............................................. 23

7.  *Treatment of Non-accepting Classes* ............................................................... 23

8.  *Request for Confirmation Despite Non-acceptance by Impaired Classes* ........ 23

B.  LIQUIDATION ANALYSIS ...................................................................................... 24

C.  FEASIBILITY .......................................................................................................... 26

V.  EFFECT OF CONFIRMATION OF PLAN ................................................................. 27

1.  Discharge ............................................................................................................ 27

2.  Revesting of Property in the Debtor ................................................................... 27

3.  Modification of Plan ........................................................................................... 28

4.  Post-Confirmation Employment and Compensation of Reorganized Debtor' Professionals ........................................................................................ 28

5.  Post-Confirmation Status Report ........................................................................ 28

6.  Post-Confirmation Conversion/Dismissal .......................................................... 29

7.  Final Decree ....................................................................................................... 29

SUPPORTING DECLARATION ..................................................................................... 30

EXHIBIT A - LIST OF ALL ASSETS ............................................................................ 31

EXHIBIT B – PROJECTED DISPOSABLE INCOME ..................................................... 32

EXHIBIT C_ LIST OF CREDITORS/CLAIMS .............................................................. 35

LAW OFFICES
Susana B. Telchard

DEBTOR'S DISCLOSURE STATEMENT

## I. INTRODUCTION

1

2    On December 22, 2010, SUZANNE FRANK GERBASI, filed a voluntary petition under

3    Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et

4    seq. She is hereinafter referred to as the "Debtor." This document is the Chapter 11 Disclosure

5    Statement. Chapter 11 allows the Debtor, and under some circumstances, creditors and others

6    parties in interest, to propose a plan of reorganization (the "Plan"). The Plan may provide for the

7    Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a

8    combination of both. The Debtor is the proponent (the "Proponent") of the Plan sent to you in the

9    same envelope as this document. THE DOCUMENT YOU ARE READING IS THE

10   DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

11   In summary, this Plan provides for payment to holders of allowed claims. The timing of

12   Plan payments to particular creditor groups will depend upon their classification under the Plan.

13   The Effective Date of the Plan shall be the first Business Day, (a) that is 11 calendar days after the

14   Confirmation Date, or (b) at least one Business Day after the Confirmation Date, if the Bankruptcy

15   Court enters an order making Bankruptcy Rule 7062 inapplicable to the proceedings respecting the

16   Confirmation Order or otherwise determining that the Effective Date may occur immediately

17   following confirmation.

18

19   ### A. PURPOSE OF THIS DOCUMENT

20   This Disclosure Statement summarizes what is in the Plan, and tells you certain

21   information relating to the Plan and the process the Court follows in determining whether or not to

22   confirm the Plan.

23   **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW**

24   **ABOUT:**

25   (1)   WHO CAN VOTE OR OBJECT;

26

27

28

1        (2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your

2 claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES

3 TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;

4        (3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS

5 DURING THE BANKRUPTCY;

6        (4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE

7 WHETHER OR NOT TO CONFIRM THE PLAN;

8        (5)    WHAT IS THE EFFECT OF CONFIRMATION;

9        (6)    WHETHER THIS PLAN IS FEASIBLE.

10     This Disclosure Statement cannot tell you everything about your rights. You should

11 consider consulting your own legal counsel to obtain more specific advice on how this Plan will

12 affect you and what is the best course of action for you.

13     Be sure to read the Plan as well as the Disclosure Statement. If there are any

14 inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

15     The Code requires a Disclosure Statement to contain "adequate information" concerning

16 the Plan. The Bankruptcy Court (the "Court") has approved this document as an adequate

17 Disclosure Statement, containing enough information to enable parties affected by the Plan to

18 make an informed judgment about the Plan. Any party can now solicit votes for or against the

19 Plan.

20

21 **B. DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION**

22 **HEARING**

23     THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

24 DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE

25 NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS

26 THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

27 CREDITORS AND INTEREST HOLDERS IN THIS CASE.

28

LAW OFFICES
Susana B. Telchard

DEBTOR'S DISCLOSURE STATEMENT

## C.  TIME AND PLACE OF THE CONFIRMATION HEARING

The hearing where the Court will determine whether or not to confirm the Plan will take

place on _____ at _____ in Courtroom 1539, 255 East Temple Street, Los

Angeles, CA 90012

## D.  DEADLINE FOR VOTING FOR OR AGAINST THE PLAN

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

and return the ballot to counsel for the Debtor at the following address:

Susana B. Tolchard
25852 Mc Bean Parkway #209
Valencia, CA 91355

**Your ballot must be received by ------------. PST on -------------------- or it will not be
counted.**

## E.  DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN

Objections to the confirmation of the Plan must be filed with the Court and served so that

any objections are actually received by counsel for the Debtor by 5:00 p.m. PST on ------------------
-------.

## F.  IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION REGARDING
## THE PLAN

Any interested party desiring further information about the Plan should contact counsel for

the Debtor, Susana B. Tolchard, 25852 Mc Bean Parkway #209, Valencia, CA 91355, (661) 287-

9986 or susana@tolchardlaw.com.


## DISCLAIMER

The financial data relied upon in formulating the Plan is based on the Debtor's books and

records and historical financial statements. The Debtor represents that the information contained in

this Disclosure Statement is true and correct to the Debtor's best knowledge.  The Court has not

yet determined whether the Plan is confirmable and makes no recommendation as to whether or

not you should support or oppose the Plan.

## H.  IMPORTANT NOTICES AND CAUTIONARY STATEMENTS

The liquidation analysis, estimates and other financial information referenced herein, or attached as exhibits hereto, have been developed by the Debtor with the assistance of her professional advisors. Although these professional advisors assisted in the preparation of this Disclosure Statement, in doing so such professionals relied upon factual information and assumptions regarding financial, business, and accounting data provided by the Debtor and third parties, all of which information has not been audited. *The Debtor's professional advisors have not independently verified such information and, accordingly, make no representations as to its accuracy.* Moreover, although reasonable efforts have been made to provide accurate information, the Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

*No entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.* Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

## II.

## BACKGROUND

## A. DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS

The Debtor is a long time real estate agent/broker in the Venice area. She operates her business through her wholly owned corporation, Abbot Kinney Real Estate. She employs approximately 50 agents in her business. She has been extremely successful in the past; however times are slow for real estate agents as is well known. The Debtor's corporation is the tenant of her commercial property. Debtor is married but separated from her ex-husband. Debtor owns three pieces of real estate: (1) Commercial property at 1422 Abbot Kinney Blvd. in Venice which is leased to her corporation; (2) a single family residence at 70754 Fairway Dr. in Rancho Mirage,

1    currently occupied by her ex-husband, and (3) a one-third interest in a three-unit residential real

2    property at 616 Milwood Ave in Venice. Debtor currently rents an apartment in Venice but will

3    reside in one of the units at Milwood Ave in October when her current apartment lease expires.

4

5                    **B.   PRINCIPALS/AFFILIATES OF DEBTOR'S BUSINESS**

6          There are no affiliates.

7

8                    **C.  MANAGEMENT OF THE DEBTOR BEFORE AND AFTER THE**

9                              **BANKRUPTCY**

10          The Debtor is an individual and takes care of management herself.

11

12                    **D.   EVENTS LEADING TO CHAPTER 11 FILING**

13          The Debtor filed her Chapter 11 petition to give stop a foreclosure by Bay Area Financial,

14    the second trust deed holder on the Debtor's commercial property. The loan had reached its term

15    and was due and payable in full. The Debtor and Bay Area reached agreements regarding a

16    number of extensions; however Bay Area finally refused to give the Debtor more time and filed a

17    Notice of Default in September 2010. She purchased the property in or about 2004 for

18    approximately $1,150,000.

19

20                    **E. SIGNIFICANT EVENTS DURING THE BANKRUPTCY**

21                              *1. Bankruptcy Proceedings*

22          The Debtor filed this case on December 22, 2010 as a Chapter 11. On January 5, 2011, she

23    filed her Schedules A through J, Statement of Financial Affairs, Disclosure of Attorney

24    Compensation, Debtor's Certificate of Employment and Statement of Current Income.    On

25    January 31, 2011, Debtor substituted in present counsel, Susana B. Tolchard, when Debtor's

26    former counsel, M. Jonathan Hayes, had to withdraw. The Debtor attended her 341(a) Meeting of

27    Creditors on February 3, 2011.

28

1    a. Employment Application: The application employing Susana B. Tolchard as Debtor's

2  general bankruptcy counsel was approved on March 4, 2011.

3    b. Claims Bar Date: At the Initial Status Conference on February 16, 2011, the Court, at

4  the request of Debtor, set the claims bar date for April 17, 2011. On March 3, 2011, Debtor served

5  Notice of the Claims Bar Date on all creditors and filed the notice and proof of service.

6    c. Disposition of Estate Assets: (i.) The Debtor owned a Mercedes Benz automobile that

7  was used by her estranged husband. The vehicle was returned to the creditor, Chase Auto Finance,

8  during this case.  (ii) On February 25, 2011, the court granted Debtor's motion requesting

9  approval for the sale of the property at 2325 Frey Ave., Venice, CA. The property was sold free of

10  liens.

11    d. Cash Collateral/APO Stipulations: (i) Debtor entered into a Stipulation with creditor Bay

12  Area Financial Corporation Regarding Cash Collateral and Adequate Protection. The court

13  approved the stipulation on March 18, 2011. (ii) Debtor also entered into a Stipulation with

14  creditor Zions First National Bank Regarding Cash Collateral and Adequate Protection. The court

15  approved the stipulation on March 22, 2011.

16

17                              *2.  Other Legal Proceedings*

18    There were no legal proceedings pending when the chapter 11 case was filed and none are

19  anticipated.

20                              *3.  Claims Objections*

21    The Debtor has not yet filed objections to any claims and is still investigating the need to

22  do so.   Claim #5 filed by Wells Fargo Bank appears to be for an unrelated bankruptcy case no.

23  10-62548. Debtor will request a withdrawal of this claim. Claim #9 filed the Los Angeles County

24  Tax Assessor will be objected to if not withdrawn. Debtor does not believe any taxes are owed.

25

26                              *4.  Adversary Proceedings*

27    There are no adversary proceedings pending and none are anticipated.

28

### 5. *Actual and Projected Recovery of Preferential or Fraudulent Transfers*

The Debtor has investigated potential claims under Bankruptcy Code sections 547 and 548. Upon completion of such investigation, the Debtor has determined that there are no viable actions for avoidance and recovery of preferential and fraudulent transfers.

### 6. *Procedures Implemented to Resolve Financial Problems*

The Debtor is current on all the secured debt monthly payments. Debtor's main financial problems were due to the inability of Debtor to pay in full the Bay Area Financial Corporation loan when it came due. This was due mostly to real estate market circumstances. Debtor will continue to make interest payments on this loan while looking to refinance as soon as feasible in order to pay back the balance.

### 7. *Current and Historical Financial Conditions*

The identity and fair market value of the estate's assets are listed in **Exhibit A**. The Debtor's projected disposable income is attached hereto as **Exhibit B**.

## III. SUMMARY OF THE PLAN OF REORGANIZATION

### A. GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests. The Plan designates which classes are impaired and which classes are unimpaired. The Plan also describes the treatment each class will receive under the Plan. The Proponent will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. § 1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed, notwithstanding the lack of acceptance by the Members, the Proponent may seek to impose the Special Assessment under applicable law.

## B.  UNCLASSIFIED CLAIMS

Certain types of claims are not placed into voting classes; instead, they are unclassified. Holders of unclassified claims not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan.

## C.  ADMINISTRATIVE EXPENSES

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(1). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The following is an estimate of the Section 507(a)(1) administrative claims that will be incurred and unpaid (net of any retainers received) through the Effective Date of the Plan and their treatment under this Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Susana B. Tolchard (Attorney for the Debtor) | $20,000 (estimated). This balance is net of the pre-petition retainer received of $5,000. | Paid on the later of (a) Effective Date of Plan or (b) Court approval of requested fees unless otherwise agreed. |
| Clerk's Office Fees | $0  (estimated) | Paid when due |
| Office of the U.S. Trustee Fees | $250 - $750 per quarter (estimated) | Quarterly fees, as required by 28 U.S.C. § 1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |
| TOTAL | $20,000 | |

## Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court. Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

## D.  PRIORITY TAX CLAIMS

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date. The Debtor does not believe that she has any outstanding tax obligations.

## E.  CLASSIFIED CLAIMS AND INTERESTS

### Class 1 - *Secured Claim of Zions First National Bank*

Claim/Collateral: Zions First National Bank has an estimated claim, according to its Proof of Claim, of $967,321.74 which is secured by a first priority deed of trust on the Debtor's commercial property at 1422 Abbot Kinney Blvd, Venice, CA 90291 (the "Abbot Kinney Property").

Impaired/Not Impaired: The Class 1 Claim is unimpaired under the Plan.

Treatment: The obligation of the Debtor to Zions First National bank will be paid according to its original terms, i.e., monthly installments of $6,122.99. The Debtor is current on this loan.

Comments:   The Abbot Kinney was purchased by the Debtor in or about 2005 for $1,150,000. The Debtor estimates its present value at $1,600,000.

1    ### Class 2 - *Secured Claim of Bay Area Financial Corporation*

2

3    Claim/Collateral:    Bay Area Financial Corporation has an estimated claim of

4    approximately $496,141.08, according to its Proof of Claim, which is secured by a second priority

5    deed of trust on the Debtor's commercial property located at 1422 Abbot Kinney Blvd., Venice,

6    CA 90291 (the "Abbot Kinney Property").

7    Impaired/Not Impaired: The Class 2 Claim is impaired under the Plan.

8    Treatment: The obligation of the Debtor to Bay Area Financial Corporation will be paid

9    the total amount of its allowed claim estimated at $496,141.08 as follows: Payments will be

10   amortized over 30 years, all due in five years. Debtor will pay Bay Area Financial monthly interest

11   only payments of $4,400 for the first 59 months beginning on the 15th day of the first full month

12   after the Effective Date and then on the 15th day of each subsequent month. Interest rate at 6%

13   fixed, or such other rate of interest rate as is necessary to comply with 11 U.S.C.

14   §1129(b)(2)(A)(i)(ii). A balloon payment of the balance of the principal amount plus accrued,

15   unpaid interest will mature and all will be due and payable on the 15th day of the 60th month. The

16   principal balance amount may be prepaid at any time without penalty.

17   Comments: The Abbot Kinney Property was purchased by the Debtor in or about 2005 for

18   $1,150,000. The Debtor's wholly-owned corporation, Abbot Kinney Real Estate, has occupied the

19   commercial property since it was purchased. Debtor has made the mortgage payments which were

20   current for approximately five years prior to 2010 when the payments went into default when the

21   note came due in full. The Debtor estimates the present value at $1,600,000.

22

23   ### Class 3-*Secured Claim of James Landon*

24   Claim/Collateral: James Landon has an estimated claim of $150,000, which is secured by

25   a third priority deed of trust on the Debtor's commercial property at 1422 Abbot Kinney Blvd,

26   Venice, CA 90291 (the "Abbot Kinney Property").   Creditor has not filed a proof of claim.

27

28

LAW OFFICES
Susana B. Tolchard

1    Impaired/Not Impaired: The Class 3 Claim is unimpaired under the Plan.

2    Treatment: The obligation of the Debtor to James Landon will be paid according to its

3    original terms. No monthly payments are due on this loan. The Debtor is current on this loan.

4    Creditor will be paid in the event of the sale or refinance of the property

5    Comments:

6

7    **Class 4 - *Secured Claim of the Los Angeles County Tax Assessor***

8

9    Claim/Collateral: The Los Angeles County Tax Assessor has filed a claim of $9,823.05

10    for property taxes on the Milwood Property.

11    Impaired/Not Impaired: The Class 4 Claim is unimpaired under the Plan.

12    Treatment: The obligation of the Debtor to Los Angeles County has been paid in full. If

13    any taxes are owed to the Los Angeles County Tax Assessor on the Effective Date, they will be

14    paid on that date.

15    **Class 5-*Secured Claim of OneWest Bank FSB***

16

17    Claim/Collateral:   OneWest Bank FSB has an estimated claim of approximately

18    $999,358.30, according to its Proof of Claim, which is secured by a first priority deed of trust on

19    the Debtor's residential property located at 70754 Fairway Dr., Rancho Mirage, CA 92270.

20    Impaired/Not Impaired: The Class 5 Claim is unimpaired under the Plan.

21    Treatment: The obligation of the Debtor to OneWest Bank FSB will be paid according to

22    its original terms, i.e. monthly installments of $5,729.00. Debtor is current with this loan.

23

24    **Class 6-*Secured Claim of Mercedes Benz Financial Services USA***

25    Claim/Collateral: Mercedes Benz Financial Services USA has an estimated claim of

26    approximately $15,134.14, according to its proof of claim, which is secured by a purchase money

27    lien on Debtor's vehicle.

28

1    Impaired/Not Impaired: The Class 6 Claim is unimpaired under the Plan.

2    Treatment: The obligation of the Debtor to Mercedes Benz Financial Services USA will be

3    paid according to its original terms, i.e. monthly installments of $300.00. Debtor is current with

4    this loan.

5    Comments:

6    ### Class 7 – *Priority Unsecured Claims*

7    Claims: Certain priority claims specified in Sections 507(a)(3), (4), (5), (6), and (7) of the

8    Bankruptcy Code are required to be classified in the Plan. Each class of priority claims must be

9    paid in cash in full on the Effective Date of the Plan unless the holders of such claims vote, as a

10   class, to accept deferred payments. In the present case, the Debtor estimates that there are no such

11   priority claims. However, if such claims arise they will be treated as follows:

12   Impaired/Not Impaired: Class 7 Allowed Priority Claims are not impaired under the Plan.

13   Treatment:    On the Effective Date, the holders of Class 7 Priority Claims will be paid in

14   cash in full the allowed amount of each Class 4 Priority Claim.

15

16   ### Class 8 – *Unsecured Claims*

17   Claims: General unsecured claims are unsecured claims not entitled to priority under Code

18   Section 507(a). In the present case, the Debtor estimates that there are two unsecured creditors

19   who are owed approximately $12,908.85. This class also will include any deficiency claim of

20   Chase Auto Finance relating to the 2006 Mercedes Benz which has been returned to the creditor.

21   Impaired/Not Impaired: Class 8 Allowed General Unsecured Claims are not impaired

22   under the Plan.

23   Treatment: Holders of General Unsecured Claims will be paid pro-rata the sum of $270.00

24   per month for months 13 through 60 for a total of $12,960.00.

25   ### Class of Interest Holders

26   ### Class 9 – Debtor

27   The Debtor will retain her ownership interest in her properties.

28

1
2
## F.  MEANS OF PERFORMING THE PLAN

3
### 1.  Funding for the Plan

4       The Debtor intends to make the payments required under the Plan from the following
5   categories as indicated:

6   ☒   **A.**   **Available Cash.** Debtor projects $ 30,000.00 cash will be available on the date of the
7   Confirmation Hearing.

8   ☒   **B.**   **Future disposable income.** Debtor calculates Debtor's projected monthly disposable
9   income for the 5 – year period following confirmation will be $2,322.93. This is based on
10  projected monthly income of $ 33,537.54 and expenses of $ 31,250.61 set forth on Debtor's
11  Declarations of Current/Post-Petition Income and Expenses (Local Bankruptcy Rule Form 3015-
12  1.20), which have been prepared as of May 12, 2011 and are attached hereto as **Exhibit B**.

13          This projection is consistent with (i) Debtor's average monthly income for the six
14  months prior to this case of $27,377.00, as set forth in Debtor's Statement of Current Monthly
15  Income (Official Bankruptcy Form 22B) filed with this court and (ii) average monthly income of
16  $32,117.62 and average monthly expenses (excluding professional expenses and fees incurred in
17  this bankruptcy case) of $27,381.23 during the four months since the petition date (based on
18  monthly operating statements filed with the Court), except such differences explained as follows:

19  _____
20  _____
21  _____

22  Upon request, Debtor will provide copies of the Statement of Current Monthly Income and/or
23  monthly operating statements.

24
25  ### 2.  Management of the Reorganized Debtor
26      The Debtor will continue to work operating her real estate business.

27
28

### 3. *Distributions*

Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn on domestic bank. Notwithstanding any other provisions of the Plan, no distributions will be made on account of claims in de minimis amounts of less than $50.00.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be revested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred

### G. RISK FACTORS

The proposed plan has the following risks: The Reorganized Debtor's ability to make post Effective Date payments required by the Plan depends on its ability to generate sufficient revenues from business operations. The Reorganized Debtor's projected income and cash flow represent a prediction of future events based upon certain assumptions. Because these future events will not necessarily occur, the projections cannot be relied upon as a guarantee of the Reorganized Debtor's actual operations. In fact, The Reorganized Debtor actual future income undoubtedly will differ from her projected income. However, Debtor has committed to making the payments described in the Plan.

### H. OTHER PROVISIONS OF THE PLAN

#### 1. Executory Contracts and Unexpired Leases

##### a. Assumptions

The Debtor does not believe that she has any executory contracts or leases. The Debtor reserves the right to modify the Plan to designate additional contracts or leases to be assumed at any time prior to the hearing on Confirmation of the Plan.

LAW OFFICES
Susana B. Telchard

1    On the Effective Date, each of the unexpired leases and executory contracts so designated

2    shall be assumed as obligations of the Reorganized Debtor. The Confirmation Order shall

3    constitute an Order approving the assumption of each lease and contract. If you are a party to a

4    lease or contract to be assumed and you object to the assumption of your lease or contract, you

5    must file and serve your objection to the Plan within the deadline for objecting to the confirmation

6    of the Plan.

7        **b. Rejections**

8    Any unexpired lease or executory contract not expressly rejected shall be deemed assumed

9    as of the Effective Date. The Debtor reserves the right to modify the Plan to designate certain

10    contracts or leases for rejection at any time prior to the hearing on confirmation of the Plan.

11    The order confirming the Plan shall constitute an order approving the rejection of such

12    leases and contracts. If you are a party to a contract or lease to be rejected and you object to the

13    rejection of your contract or lease, you must file and serve your objection to the Plan within the

14    deadline for objecting to the confirmation of the Plan. See Disclosure Statement for the specific

15    date.

16    THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING

17    FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY DAYS AFTER THE

18    EFFECTIVE DATE. Any claim based on the rejection of an executory contract or unexpired

19    lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

20

21    **2.  CHANGES IN RATES SUBJECT TO REGULATORY COMMISSION APPROVAL**

22    The Debtor is not subject to governmental regulatory commission approval of their rates.

23

24    **3.  RETENTION OF JURISDICTION.**

25    The Court will retain jurisdiction to the fullest extent provided by law.

26

27

28

DEBTOR'S DISCLOSURE STATEMENT

## I. TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. THE FOLLOWING DISCLOSURE OF POSSIBLE TAX CONSEQUENCES IS INTENDED SOLELY FOR THE PURPOSE OF ALERTING READERS ABOUT POSSIBLE TAX ISSUES THIS PLAN MAY PRESENT TO THE DEBTOR. THE PROPONENTS CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES CONTAINED BELOW ARE THE ONLY TAX CONSEQUENCES OF THE PLAN BECAUSE THE TAX CODE EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE COMPLETELY AND ACCURATELY ALL THE TAX IMPLICATIONS OF ANY ACTION.

The Debtor does not anticipate that confirmation of the Plan will have a significant or material effect on her tax liability. The Debtor makes no representations regarding the potential tax consequences to creditors.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

1   the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

2   whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

3

## A. WHO MAY VOTE OR OBJECT

4

5

6   *1. Who May Object to Confirmation of the Plan*

7   Any party in interest may object to the confirmation of the Plan, but as explained below

8   not everyone is entitled to vote to accept or reject the Plan.

9

10   *2. Who May Vote to Accept/Reject the Plan*

11   A creditor or interest holder has a right to vote for or against the Plan if that creditor or

12   interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2)

13   classified in an impaired class.

14

15   *a. What Is an Allowed Claim/Interest*

16   As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to

17   have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in

18   interest brings a motion objecting to the claim. When an objection to a claim or interest is filed,

19   the creditor or interest holder holding the claim or interest cannot vote unless the Court, after

20   notice and hearing, either overrules the objection or allows the claim or interest for voting

21   purposes.

22   **THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS APRIL**

23   **17, 2011.** A creditor or interest holder may have an allowed claim or interest even if a proof of

24   claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the

25   Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and

26   (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled

27

28

1 and no party in interest has objected to the interest. Consult Exhibit "C" to see how the Debtor has

2 characterized your claim or interest.

3

4      **b.** *What Is an Impaired Claim/Interest*

5      As noted above, an allowed claim or interest only has the right to vote if it is in a class that

6 is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual

7 rights of the members of that class. For example, a class comprised of general unsecured claims is

8 impaired if the Plan fails to pay the members of that class 100% of what they are owed.

9      In this case, the Proponent believes that Classes 2 and 5 are impaired and that holders of

10 claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The

11 Proponent believes that class 1, 3 and 4 are unimpaired and that holders of claims of those classes

12 therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the

13 Proponent's characterization of their claim or interest as being impaired or unimpaired may file an

14 objection to the Plan contending that the Proponent has incorrectly characterized the class.

15

16      **3.** *Who is Not Entitled to Vote*

17      The following four types of claims are not entitled to vote: (1) claims that have

18 been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code

19 sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any

20 value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes

21 are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections

22 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

23 and they are required to receive certain treatment specified by the Code. Claims in classes that do

24 not receive or retain any value under the Plan do not vote because such classes are deemed to have

25 rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU

26 MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

27

28

LAW OFFICES
Susana B. Tolchard

DEBTOR'S DISCLOSURE STATEMENT

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in this Article.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

### 7. Treatment of Non-accepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8. Request for Confirmation Despite Non-acceptance by Impaired Classes

The Proponents will ask the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

## B.  LIQUIDATION ANALYSIS

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reason:

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million. In this case, the trustee's compensation is estimated to equal $120,353.67.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation. (This information is provided from the Debtor's books and records.)

## ASSETS VALUE AT LIQUIDATION VALUES:
### (as of May 12, 2011)

| | |
|---|---|
| **CURRENT ASSETS** | |
| a. Cash on hand | $ 6,000.00 |
| b. Personal Property in residence | $ 7,800.00 |
| | ============ |
| TOTAL CURRENT ASSETS | $ 13,800.00 |
| | ============ |

**FIXED ASSETS**

| | |
|---|---|
| a. Real Property located at 1422 Abbot Kinney Blvd,, Venice, CA | $1,600,000.00 |
| b. Real Property located at 70754 Fairway Drive, Rancho Mirage, CA 92270 | $ 950,000.00 |
| c. Real property located at 616 Milwood Ave., Venice, CA 90291(Debtor has 1/3 interest) | $ 650,000.00 |
| d. 2008 Mercedes Benz Automobile | $ 23,000.00 |
| | ============ |
| TOTAL FIXED ASSETS | $3,223,000.00 |

**OTHER ASSETS**

| | |
|---|---|
| a. Promissory Note face value $320,000 and Deed of Trust from Justin Berfield secured by 2nd lien on 2337 Abbot Kinney Blvd., Venice, CA 90291 (property is in foreclosure) | $ -0- |
| b. Promissory Note face value $270,000 from Sharon Masjedi secured by 2nd lien on 1042 Berkeley, Los Angeles, CA 90292 (borrower in Chapter 7 bankruptcy) | $ -0- |
| c. Potential claim against La Jolla Bank and Joe Pinnesenault arising from debtor's $750,000 investment in MAM Wealth Fund real estate development project | unknown net value |
| | ============ |
| TOTAL OTHER ASSETS | $-0- |

| | |
|---|---|
| **TOTAL ASSETS AT LIQUIDATION VALUE** | $3,236,800.00 |
| **Less:** Secured creditor's recovery: | ($3,312,778.20) |
| **Less:** Chapter 7 trustee fees and expenses | ($ 120,353.67) |
| **Less:** Chapter 11 administrative expenses | |
| **Less:** Priority claims, excluding administrative expense claims | ($ TBD) |
| **Less:** Debtor's claimed exemptions | ($ 21,665.86) |
| (1) Balance for unsecured claims | $ -0- |
| (2) Total amount of unsecured claims | $ 12,908.85 |

LAW OFFICES
Susana B. Tolchard

DEBTOR'S DISCLOSURE STATEMENT

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE
OR RETAIN IN A CH. 7 LIQUIDATION:   = 0%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE
OR RETAIN UNDER THIS PLAN:       = 100 %**

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN |
|---|---|
| Administrative Claims | 100% |
| Class 1 Zions First National Bank | 100% |
| Class 2 Bay Area Financial | 100% |
| Class 3 James Landon | 100% |
| Class 4 Los Angeles County Tax | 100% |
| Class 5 OneWest Bank FSB | 100% |
| Class 6 Mercedes Benz Financial | 100% |
| Class 7 Priority Unsecured Claims | 100% |
| Class 8 Unsecured Claims | 100% |
| Class 9 Debtor | Retains property |

## C. FEASIBILITY

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied.  The only payments required on the Effective Date are

1 | the professional and administrative fees estimated at $20,000. The Debtor believes that she will
2 | have sufficient cash on hand in order to meet her obligations under the Plan.

3 | The second aspect considers whether the Reorganized Debtor will have enough cash over
4 | the life of the Plan to make the required Plan payments. The Debtor has provided a budget in
5 | **Exhibit B** which sets forth her required income and expenses to meet the obligations under the
6 | Plan.

7 | YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL
8 | ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL
9 | STATEMENTS.

10 |

11 | **V.  EFFECT OF CONFIRMATION OF PLAN**

12 | **1. DISCHARGE**

13 | This Plan provides that the Debtor shall be discharged of liability for payment of debts
14 | incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141. However,
15 | the discharge will not discharge any liability imposed by the Plan. The discharge will not be
16 | entered until the Debtor has made all of the payments required to be made to the Class 4 creditors
17 | under the plan.

18 |

19 | **2.  REVESTING OF PROPERTY IN THE DEBTOR**

20 | Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the
21 | property of the estate in the Reorganized Debtor.

22 | From and after the Effective Date, the Reorganized Debtor may operate and may use,
23 | acquire, and dispose of property, and compromise and settle any claims or causes of actions
24 | without supervision or consent of the Bankruptcy Court and are free of any restrictions of the
25 | Bankruptcy Code or Bankruptcy Rules.

26 | The Reorganized Debtor shall have, retain, reserve and be entitled to assert all claims,
27 | causes of action, rights of setoff and other legal or equitable defenses that the Debtor had

28 |

LAW OFFICES
Susana B. Tolchard

DEBTOR'S DISCLOSURE STATEMENT

1  immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been

2  commenced; and all of the Reorganized Debtor's legal and equitable rights respecting any such

3  claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may

4  be asserted after the Effective Date.

5

6  ### 3.  MODIFICATION OF PLAN

7      The Proponent may modify the Plan at any time before confirmation.  However, the Court

8  may require a new disclosure statement and/or re-voting on the Plan.

9      The Proponent may also seek to modify the Plan at any time after confirmation only if (1)

10  the Plan has not been substantially consummated and (2) the Court authorizes the proposed

11  modifications after notice and a hearing.

12

13  ### 4.  POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF

14  ### REORGANIZED DEBTOR'S PROFESSIONALS

15      After the Confirmation Date, the Reorganized Debtor may employ, without notice,

16  hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals

17  (the "Post-confirmation Professionals") as it may desire to render services on such terms as it

18  deems reasonable.  With respect to services rendered by the Post-confirmation Professionals, the

19  Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses

20  without notice, hearing, or order of the Bankruptcy Court.

21  ### 5.  POST-CONFIRMATION STATUS REPORT

22      Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtor

23  shall file a status report with the Court explaining what progress has been made toward

24  consummation of the confirmed Plan.  The status report shall be served on the United States

25  Trustee, the twenty largest unsecured creditors, and those parties who have requested special

26  notice.  Further status reports shall be filed every 120 days and served on the same entities.

27

28

LAW OFFICES
Susana B. Tolchard

DEBTOR'S DISCLOSURE STATEMENT

## 6. POST-CONFIRMATION CONVERSION/DISMISSAL

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

## 7. FINAL DECREE

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: May 12, 2011

SUZANNE FRANK GERBASI, Debtor and Debtor-in-Possession
Name of Plan Proponent

/s/ Susana B. Tolchard
Signature of Attorney for Plan Proponent

Susana B. Tolchard
Attorney for Plan Proponent

## SUPPORTING DECLARATION

I, SUZANNE FRANK GERBASI, declare as follows:

1.  I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.  I am the Debtor in this case.

3.  I have reviewed the information within the Disclosure Statement, including all financial information.

4.  I believe that all information contained in the Disclosure Statement is true and correct and fairly presented, to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of May 2011, at Venice, California.

SUZANNE FRANK GERBASI

## EXHIBIT A - LIST OF ALL ASSETS

| | | |
|---|---|---|
| Real Property located at 1422 Abbot Kinney Venice, CA 90291 | | FMV $1,600,000 Liens $1,587,231 |
| Real Property located at 70754 Fairway Dr. Rancho Mirage, CA 92270 | | FMV $950,000 Liens $999,380 |
| 1/3 interest in Real property located at 616 Milwood Ave. Venice, CA 90291 | | FMV $650,000 Liens $675,000 |
| Cash in Bank | All claimed exempt | $6,000 |
| Household Goods & Furnishings, Books, Pictures, and Personal Effects | All claimed exempt | $7,000 |
| Clothing & Jewelry | All claimed exempt | $800 |
| 2008 Mercedes Benz CLK 550 Automobile | Equity exempt | FMV $23,000 Lien$15,134 |
| Promissory Note face value $320,000 and Deed of Trust from Justin Berfield secured by 2nd lien on 2337 Abbot Kinney Blvd., Venice, CA 90291 (property is in foreclosure) | | FMV $-0- |
| Promissory Note face value $270,000 from Sharon Masjedi secured by 2nd lien on 1042 Berkeley, Los Angeles, CA 90292 (borrower in Chapter 7 bankruptcy) | | FMV $-0- |
| Potential claim against La Jolla Bank and Joe Pinnesenault arising from debtor's $750,000 investment in MAM Wealth Fund real estate development project | | unknown |
| **TOTAL** | | FMV $3,285,850 Liens $3,458,874 |

DEBTOR'S DISCLOSURE STATEMENT

LAW OFFICES
Susana B. Tolchard

In re:

Suzanne Frank Gerbasi

Case No.: 2:10-bk-64548-PC

Debtor.                                    (If known)

# DECLARATION OF CURRENT/ POST-PETITION INCOME

Complete this statement by providing the monthly income of the debtor and the debtor's spouse at this time. The column labeled
"Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition was filed,
unless the spouses are separated and a joint petition was not filed. Do not state the name of any minor child.

| Debtor's Marital Status: separated | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| | RELATIONSHIP(S) | AGE(S) |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Realtor | |
| Name of Employer | Abbot Kinney Real Estate | |
| How Long Employed | 8 years | |
| Address of Employer | 1422 Abbot Kinney Blvd., Venice, CA 90291 | |

| INCOME: | | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. | Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ 20,000.00 | $ |
| 2. | Estimate monthly overtime | $ | $ |
| 3. | SUBTOTAL | $ | $ |
| 4. | LESS PAYROLL DEDUCTIONS | | |
| | a. Payroll taxes and social security | $ | $ |
| | b. Insurance | $ | $ |
| | c. Union dues | $ | $ |
| | d. Other (specify) _____ | $ | $ |
| 5. | SUBTOTAL OF PAYROLL DEDUCTIONS | $ | $ |
| 6. | TOTAL NET MONTHLY TAKE HOME PAY | $ | $ |
| 7. | Regular income from operation of business or profession or farm (attach detailed statement) | $ | $ |
| 8. | Income from real property | $ 11,837.54 | $ |
| 9. | Interest and dividends | $ | $ |
| 10. | Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | $ |
| 11. | Social security or other government assistance (Specify) _____ | $ 1,700.00 | $ |
| 12. | Pension or retirement income | $ | $ |
| 13. | Other monthly income (Specify) _____ | $ | $ |
| 14. | SUBTOTAL OF LINES 7 THROUGH 13 | $ | $ |
| 15. | MONTHLY INCOME: (Add amounts shown on lines 6 and 14) | $ 33,537.54 | $ |
| 16. | COMBINED MONTHLY INCOME (Combine column totals from line 15) | $33,537.54 | |

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____

_____
Debtor

This form has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                    F 3015-1.20

EXHIBIT B (page 1 of 3)    page 32

| In re: | Case No.: 2:10-bk-64548-PC |
|---|---|
| Suzanne Frank Gerbasi | |
| Debtor. | (If known) |

# DECLARATION OF CURRENT/ POST-PETITION EXPENSES

Complete this statement by providing the monthly expenses of the debtor and the debtor's family **at this time**. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐   Check this box if this is a joint case and debtor's spouse maintains a separate household. Complete a *Declaration of current/Post-Petition Expenses* labeled "Spouse."

| | | |
|---|---|---|
| 1. | Rent or home mortgage payment (include lot rented for mobile home) | $5,729.00 |
| | a. Are real estate taxes included?      Yes _____   No _X_____ | |
| | b. Is property insurance included?      Yes _____   No _X_____ | |
| 2. | Utilities:   a.  Electricity and heating fuel | $1,300.00 |
| | b.  Water and sewer | $  130.00 |
| | c.  Telephone | $    92.00 |
| | d.  Other: TV/Service/ Internet | $  100.00 |
| 3. | Home maintenance (repairs and upkeep) | $ 1250.00 |
| 4. | Food | $  600.00 |
| 5. | Clothing | $  300.00 |
| 6. | Laundry and dry cleaning | $  100.00 |
| 7. | Medical and dental expenses | $  250.00 |
| 8. | Transportation (not including car payments) | $  600.00 |
| 9. | Recreation, clubs and entertainment, newspapers, magazines, etc. | $  250.00 |
| 10. | Charitable contributions | $  150.00 |
| 11. | Insurance (not deducted from wages or included in home mortgage payments) | |
| | a.  Homeowner's or renter's | $  188.22 |
| | b.  Life | $  219.00 |
| | c.  Health | $  273.60 |
| | d.  Auto | $  133.30 |
| | e.  Other : _____ | $_____ |
| 12. | Taxes (not deducted from wages or included in home mortgage payments) | |
| | (Specify): Estimated self employment taxes | $ 2,000.00 |
| 13. | Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
| | a.  Auto | $   300.00 |
| | b.  Other _____ | $_____ |
| | c.  Other _____ | $_____ |
| 14. | Alimony, maintenance, and support paid to others | $ 2,700.00 |
| 15. | Payments for support of additional dependents not living at your home | $_____ |
| 16. | Regular expenses from operation of business, profession, or farm (attach detailed statement) | $_____ |
| 17. | Other: See Detailed Expense Attachment | $14,585.49 |
| 18. | MONTHLY EXPENSES (Total lines 1-17) | $31,250.61 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document: _____
_____

| | | |
|---|---|---|
| 20. | STATEMENT OF MONTHLY NET INCOME | |
| | a.  Total monthly income from Line 15 of *Declaration of Current/Post-Petition Income* | $33,537.54 |
| | b.  Total monthly expenses from Line 18 above | $31,250.61 |
| | c.  Monthly net income (a. minus b.) | $2,322.93 |

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____         _____

                                                            Debtor

This form has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    F 3015-1.20

EXHIBIT B (page 2 of 3) page 33

# DECLARATION OF CURRENT/ POST-PETITION EXPENSES
## Detailed Expense Attachment

Other Expenditures:

### 70754 Fairway Drive property

| | |
|---|---|
| Home Owners Association fees | $291.66 |
| Property taxes | $548.29 |

### 616 Milwood property

| | |
|---|---|
| Debtor's portion on Milwood property mortgage | $1,330.00 |
| Debtor's portion on Milwood property taxes and insurance | $ 328.00 |

### 1422 Abbot Kinney Blvd. property

| | |
|---|---|
| First Deed of Trust payment on 1422 Abbot Kinney Blvd. | $6,122.99 |
| Second Deed of Trust payment on 1422 Abbot Kinney Blvd. | $4,400.00 |
| Property Taxes | $1,314.55 |
| Property insurance | $ 250.00 |
| **TOTAL OTHER EXPENDITURES** | **$14,585.49** |

**EXHIBIT C**

**LIST OF CREDITORS/CLAIMS**

| CREDITOR | PROOF OF CLAIM NO. & AMOUNT | SCHEDULED BY DEBTOR |
|---|---|---|
| Zions First National Bank | (#8) $967,321.74 | $967,321.74 |
| Bay Area Financial Corporation | (#7) $496,141.08 | $496,141.08 |
| One West Bank FSB | (#3) $999,358.30 | $999,358.30 |
| Mercedes Benz Financial Services | (#2) $15,134.14 | $ 15,134.14 |
| Chase Bank USA, N.A. | (#6) $ 7,592.31 | $ 7,592.31 |
| Wells Fargo Bank, N.A. | (#1) $ 5,316.54 | $ 5,316.54 |
| Chase Auto Finance | (#4) $46,284.00 | $ 10,284.00 |
| Wells Fargo Bank | (#5) $257,047.37 (wrong case) | $ -0- |
| Los Angeles County Tax Assessor | (#9) $9,823.05 | $ -0- |

1

**PROOF OF SERVICE OF DOCUMENT**
I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My
2 | business address is: 25852 Mc Bean Parkway #209, Valencia, CA 91355.

3 | The foregoing document described as **DEBTOR' DISCLOSURE STATEMENT**
**DESCRIBING DEBTOR' CHAPTER 11 PLAN** will be served or was served **(a)** on the judge
4 | in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated
below:

5

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –
6 | Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing
document will be served by the court via NEF and hyperlink to the document. On **5/13/11** I
7 | checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the
8 | email address(es) indicated below:

9 |     John P Byrne    John.Byrne@byrnelaw.biz
       Russell Clementson    russell.clementson@usdoj.gov
10 |    Christine M Fitzgerald    cfitzgerald@scckg.com
       Margaret E Garms    margaret@parkinsonphinney.com
11 |    M Jonathan Hayes    jhayes@polarisnet.net
12 |    Christopher Hoo    choo@millerlaw.biz
       Randall P Mroczynski    randym@cookseylaw.com
13 |    Donna T Parkinson    donna@parkinsonphinney.com
       Timothy J Silverman    tim@sgsslaw.com
14 |    Susana B Tolchard    susana@tolchardlaw.com
15 |    United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

16 | **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or
entity served)**:** On **5/13/2011** I served the following person(s) and/or entity(ies) at the last known
17 | address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy
thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an
18 | overnight mail service addressed as follows. *Listing the judge will be completed no later than 24 hours after the document is filed.*

19 | **Hon. Peter H. Carroll**
20 | US Bankruptcy Court
255 East Temple Street, Suite 1534
21 | Los Angeles, CA 90012

22 | **III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**
(indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling
23 | LBR, on ------/2010 I served the following person(s) and/or entity(ies) by personal delivery, or
(for those who consented in writing to such service method), by facsimile transmission and/or
24 | email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

25 | I declare under penalty of perjury under the laws of the United States of America that the
26 | foregoing is true and correct.

27 | **5/13/2011**_____    **Susana B. Tolchard**_____    **/s/ Susana B. Tolchard**_____
       *Date*                    *Type Name*                    *Signature*

28