BARRY R. GORE, ESQ. SBN 143278
ANTHONY J. ROTHMAN, ESQ. SBN 143546
SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone:  (310) 542-0111
Facsimile:  (310) 214-7254

Bankruptcy Counsel to Secured Creditor
Bay Area Financial Corporation

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-bk-64548-PC |
| SUZANNE FRANK GERBASI, | Chapter 11 |
| Debtor and Debtor in Possession. | **OBJECTION OF BAY AREA FINANCIAL CORPORATION TO DEBTOR'S CHAPTER 11 PLAN; DECLARATION OF VINCENT J. LOMBARDO IN SUPPORT** |
| | Date: August 31, 2011<br>Time: 9:30 a.m.<br>Place: 255 E. Temple Street<br>　　　　Courtroom 1539<br>　　　　Los Angeles, CA 90012 |

**TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Secured Creditor Bay Area Financial Corporation ("Bay Area") hereby objects to the Debtor's Chapter 11 Plan (the "Plan") on the grounds set forth below in the case of Suzanne Frank Gerbasi, the above-referenced debtor and debtor-in-possession ("Debtor").

# I.

## INTRODUCTION[1]

Bay Area holds a note from the Debtor and a second deed of trust on real property owned by the Debtor. Bay Area objects to the Plan: (1) because it undeniably fails to provide Bay Area with the present value of its claim, as required under Code Section 1129(b)(2) and (2) the claim was calculated as of the petition date rather than the effective date of the Plan.

The Debtor proposes to pay Bay Area only the amount of its secured claim existing as of the petition date, rather than the amount of Bay Area's claim existing as of the effective date of the Plan. Specifically, the Debtor proposes to make interest only payment to Bay Area at 6% interest for a term of five (5) years, after which the entire original principal balance will be paid off with a single balloon payment. However, Bay Area's loan is secured by a second trust deed (not a first) and was originally only for a very short term of 6 months. In the current lending environment, a loan with this security is very difficult to obtain, so it is not surprising that the terms of such a loan would be very stringent. To give Bay Area the present value of its claim as of the effective date of the Plan, the required rate of interest would be over 12%, the term would be 1 year, and Bay Area's principal balance would need to be amortized, rather than ballooned out at the end of the term. Further, while reasonable minds might differ as to the theoretical terms that might apply to an extremely risky, second position hard money loan such as this, one thing is certain: the terms would not include interest-only payments at an extremely generous 6% rate, with the lender having to wait five (5) before recovering a single penny of its principal.

Of course, with a one year term, the Debtor would need to refinance or sell the Property within one year in order to pay off Bay Area. However, the Debtor instead proposes to keep the

---

[1] This Objection is based on this pleading, the attached Declaration of Vincent J. Lombardo, the arguments of counsel, the record in this case, any oral or documentary evidence presented at or prior to the hearing on the Motion, and any other admissible evidence properly brought before the Court. In addition, Bay Area request that the Court take judicial notice of all documents filed with the Court in this case.

1   Property, which implies that the Debtor will need to refinance the property within a year to pay

2   off Bay Area.  However, given the Debtor's minimal equity in the Property (if any) and the

3   current state of the economy, it seems highly unlikely that any such refinancing can be

4   achieved.

5           Accordingly the Debtor's Plan is not feasible and, if confirmed, Bay Area will not

6   receive fair and equitable treatment under the Plan as required by the Bankruptcy Code.  Based

7   on the foregoing, Bay Area objects to the Plan.

8                                                  **II.**

9                                   **STATEMENT OF FACTS**

10          On December 22, 2010 (the "Petition Date"), the Chapter 11 Debtor and Debtor in

11  Possession, Suzanne Frank Gerbasi, ("Frank" or "Debtor"), filed her voluntary petition under

12  chapter 11 of Title 11 of the United States Code.

13          The Debtor's bankruptcy schedules reflect that her bankruptcy estate includes real

14  property commonly known as 1422 Abbott Kinney Blvd., Venice, California 90291 (the

15  "Property"), and there are three deeds of trust against the Property in favor of the following

16  parties in the following order of priority: (1) Zions Bank; (2) Bay Area; and (3) James M.

17  Landon.

18          The Debtor executed that certain Optional Advance Note ("Note") to Bay Area for a

19  term of only 6 months at a non-default interest rate of 5% over the prime rate of interest, so

20  nondefault interest was 8.25% prior to the Petition Date.  The Note provides for default interest

21  of 8% over prime, so default interest has been 11.25% for purposes of calculating Bay Area's

22  claim.  Bay Area also received the "Deed of Trust and Assignment of Rents and Request for

23  Special Notice" ("Deed of Trust").  Bay Area filed its proof of claim in this case on April 13,

24  2011.  A true and correct copy of its proof of claim is attached hereto as Exhibit "A."  True and

25  correct copies of the Note and Deed of Trust are included in that proof of claim.  Prior to the

26

27

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

1    Petition Date, the Debtor defaulted under the Note, and the Note became due and payable in

2    full.

3        In its proof of claim, Bay Area explained that its claim ("Secured Claim") as of the

4    Petition Date was $496,141.08 and that its claim continues to accrue, including amounts for

5    default interest and attorneys' fees and costs.  As of August 23, 2011, Bay Area's claim will be

6    approximately $501,299 (not including attorneys' fees and costs billed during August 2011),

7    and by the effective date, it will likely be over $504,000.  Declaration of Vincent J. Lombardo

8    ("Lombardo Decl.") at ¶ 6.  The Debtor's plan, though, is to pay Bay Area the amount of its

9    claim as of the Petition Date ($496,141.08) rather than the amount that it will likely be on the

10    effective date (i.e., over $504,000).  Plan at p. 6, line 5.

11        Also, the Plan is unclear about the proposed rate of interest for Bay Area:

12        Debtor will pay Bay Area Financial monthly interest only payments of
$4,400 for the first 59 months beginning on the 15th day of the first full month
13    after the Effective Date and then on the 15th day of each subsequent month.
Interest rate at 6% fixed, or such other rate of interest rate as is necessary to
14    comply with 11 U.S.C. §1129(b)(2)(A)(i)(ii). A balloon payment of the balance of
the principal amount plus accrued, unpaid interest will mature and all will be due
15    and payable on the 15th day of the 60th month.

16    Plan at p. 6, lines 6-11.

17        For an unpaid claim of $496,141.08, $4,400 per month in interest only payments equates

18    to an interest rate of approximately 10.6%.  However, the Plan is not clear whether the $4,400 is

19    to be treated as the interest owed to the Debtor because in the next sentence, the Plan says:

20    "Interest rate at 6% fixed, or such other rate of interest rate as is necessary to comply with 11

21    U.S.C. §1129(b)(2)(A)(i)(ii)."  So it appears that the Plan also only provides for Bay Area to

22    receive 6% interest over five years with a balloon payment of principal after that time.

23    However, for a second loan on the Property, to give Bay Area the present value of its claim, the

24    rate of interest and term – considering the original terms of the Note – should be 12% payable

25    monthly and 1 year, respectively, with amortization over 30 years (payable monthly and the

26    remainder of principal paid at the end of the 1 year term).  Lombardo Decl. at ¶ 6.  Further, if

27

4

1  the Debtor insists on retaining ownership of the Property, and if Bay Area's loan is given a one

2  year term (which is appropriate in these circumstances), then a refinance of the Property within

3  one year is very unlikely in this lending environment.  *Id.*

4  　　　The Debtor has not provided any evidence in support of the Debtor's proposed rate of

5  interest or other terms for repayment of Bay Area's loan if the Plan becomes effective.

6  　　　The Debtor through counsel represented to Bay Area that (1) prior to the Petition Date

7  and continuing to date, Abbott Kinney Real Estate, Inc., which is wholly owned by the Debtor,

8  leased the Property from the Debtor for the amount of the mortgages secured by the Property

9  (which are held by Zions Bank and Bay Area), taxes and insurance, which is currently

10  $7,522.99 per month; (2) Zions Bank received an assignment of rents from the Property; and (3)

11  James M. Landon did not receive an assignment of rents and has no rights to cash collateral,

12  including the rents from the Property.  Since the Petition Date, those rents are agreed to be cash

13  collateral.  The Debtor in her schedules states that the value of the Property is $1,600,000.00.

14  Bay Area reserves its rights with respect to the actual value of the Property, the amount of its

15  claim and other objections to the plan.

16  　　　Bay Area and the Debtor negotiated and entered into the Stipulation Regarding Cash

17  Collateral And Adequate Protection ("Stipulation") pursuant to which Zions Bank and Bay Area

18  are to receive (and Bay Area believes they have received) monthly payments from the Debtor

19  from cash collateral.  The motion to approve the stipulation was granted in the Court's order

20  [Docket No. 48] entered on March 18, 2011.

21  ### III.

22  ### LEGAL ANALYSIS

23  **A.    The Court Should Not Approve the Plan Because the Plan is Not Feasible**

24  　　　The proponent of a Chapter 11 plan must show that the plan "has a reasonable

25  probability of success:"

26  　　　Section 1129(a)(11) of the United States Bankruptcy Code (the "Code") sets
forth the feasibility requirement and provides that a plan may be confirmed

27

5

only if confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). A plan meets this feasibility standard if the plan offers a reasonable prospect of success and is workable. 5 Collier on Bankruptcy § 1129.02[11] (15th ed. 1992).

*Mutual Life Ins. Co. v. Patrician St. Joseph Partners, Ltd. Partnership (In re Patrician St. Joseph Partners Ltd. Partnership)*, 169 B.R. 669, 674 (D. Ariz. 1994).

In determining whether a plan is "feasible" within the meaning of § 1129(a)(11), courts have identified the following factors to be considered:

> the prospective earnings of the business or its earning power; the soundness and adequacy of the capital structure and working capital for the business which the debtor will engage in post-confirmation; the prospective availability of credit; whether the debtor will have the ability to meet its requirements for capital expenditures; economic and market conditions; the ability of management, and the likelihood that the same management will continue; and any other related factors which would materially reflect on the company's ability to operate successfully and implement its plan."

*In re Kemp,* 134 B.R. 413, 416 (Bankr. E.D. Cal. 1991) (quoting *In re Texaco, Inc.,* 84 Bankr. 893, 910 (Bankr. S.D.N.Y. 1988)).

If the Plan pays Bay Area interest of 12%, then the interest only payment would be $5,020.00 rather than $4,400.00 per month. The Debtor estimates that she will have more than $2,300 per month in disposable income (Plan at p. 9, line 11) above the amounts that are currently proposed for payments, so this payment would be feasible. However, the Debtor should have to repay Bay Area within one year (rather than the proposed five years), and with this change, the Debtor will need to refinance or sell the Property within one year. If the Debtor agrees to these terms then the Plan is feasible. However, if the Debtor insists on retaining ownership of the Property, then a refinance of the Property within one year is very unlikely, Lombardo Decl. at ¶ 6, and the Plan is not feasible.

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

**B.**    **The Plan Should Not be Confirmed Because it is Not Fair and Equitable to Bay Area.**

Pursuant to Section 1129(b)(2), like all creditors, Bay Area must receive "fair and equitable" treatment of its Secured Claim on the Effective Date:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> (A) With respect to a class of secured claims, the plan provides—
>
> (i) (I) that the holders of such claims retain the liens securing such claims . . .; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling **at least the allowed amount of such claim, of a value, as of the effective date of the plan,** of at least the value of such holder's interest in the estate's interest in such property; . . . or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b) (**emphasis added**); *In re Lighthouse Lodge, LLC*, 2010 Bankr. LEXIS 4574, 28-29 (Bankr. N.D. Cal. Dec. 14, 2010) ("To be fair and equitable to a secured creditor, the creditor must retain its lien and receive deferred cash payments equal to its secured claim."). Bay Area will retain its lien, but Bay Area will not receive on account of its Secured Claim by "deferred cash payments totaling **at least the allowed amount of such claim, of a value, as of the effective date of the plan**" for the following reasons.

First, the plan only attempts to pay Bay Area the amount of its claim as of the Petition Date ($496,141.08) rather than the amount of its claim on the effective date (over $504,000) as required by Section 1129(b)(2)(A)(ii). *In re Edgewater Motel, Inc.*, 85 B.R. 989, 995 (Bankr. E.D. Tenn. 1988) ("In determining the allowed amount of the claim of a fully-secured creditor, the creditor is entitled to his contract rate of interest up to the effective date of the plan by virtue of 11 U.S.C. § 506(b)").

Second, as explained in more detail below, the Debtor proposes to pay an interest rate that is less than the rate required for Bay Area to receive the present value of its claim, because

1    for a creditor to receive the present value of its claim, the rate of interest must be the market rate

2    (or an approximation thereof if no such loan would be available) as of the effective date of the

3    plan. *See In re N. Valley Mall, LLC*, 432 B.R. 825, 835 (Bankr. C.D. Cal. 2010). As an initial

4    matter, treatment of Bay Area's claim is unclear because it provides for interest only payments

5    of $4,400, which relates to approximately 10.6% interest, but then the Plan says the interest rate

6    is to be "6% fixed, or such other rate of interest rate as is necessary to comply with 11 U.S.C.

7    §1129(b)(2)(A)(i)(ii). A balloon payment of the balance of the principal amount plus accrued,

8    unpaid interest will mature and all will be due and payable on the 15th day of the 60th month."

9    Plan at p. 6, lines 6-11.

10         For a claim of $501,000, $4,400 per month as interest equates to an interest rate of

11    approximately 10.5%. However, the Plan is not clear whether this amount ($4,400) is to be

12    treated as interest owed to the Debtor because in the next sentence, the Plan says: "Interest rate

13    at 6% fixed, or such other rate of interest rate as is necessary to comply with 11 U.S.C.

14    §1129(b)(2)(A)(i)(ii)." As noted, interest of 6% is not fair and equitable, but 10.5% is much

15    closer to the appropriate rate of 12%. The Debtor does not offer any evidence that 6% would

16    comply with 11 U.S.C. §1129(b)(2)(A)(i)(ii).

17         Thus, for Bay Area to receive the present value of its Secured Claim, Bay Area has

18    provided evidence that the rate of interest should be at least 12%, with a term of one (1) year,

19    and amortization would be over 30 years as explained below.

20         Third, the plan also fails the test under Section 1129(b)(2)(A)(iii), which requires that a

21    plan provide for the realization by Bay Area of the "indubitable equivalent" of its Secured

22    Claim, which means providing the present value of the claim as of the effective date of the Plan:

23

24         The concept of "indubitable equivalence" comes from the decision written by
        Judge Learned Hand in *Metropolitan Life Ins. Co. v. Murel Holding Corp. (In*
        *re Murel Holding Corp.)*, 75 F.2d 941, 942 (2d Cir. 1935):

25

26           [P]ayment ten years hence is not generally the equivalent of payment
          now. Interest is indeed the common measure of the difference, but a
          creditor who fears for the safety of his principal will scarcely be content

27

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most *indubitable equivalence*. (Emphasis added.)

The Ninth Circuit approved the following analysis of "indubitable equivalence" in *Arnold & Baker Farms v. United States (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1421 (9th Cir. 1996):

[N]o matter how hot the market for real estate may become in the future, the market for farm real estate here and now is not such as would permit us to hold that the value of the land being offered is the indubitable equivalent of [the mortgagee]'s claim. "Indubitable" means "too evident to be doubted." Webster's Ninth New Collegiate Dictionary (1985). We profess doubt on the facts of this case.

(quoting *In re Walat Farms, Inc.*, 70 B.R. 330, 334 (Bankr. E.D. Mich. 1987)).

Under the TIC Plan, the NSA allowed secured claim is to be paid at a below market rate of interest (as discussed in greater detail below) over a term of seven years, with a substantial balloon payment due at the end of seven years, with prospects for refinancing unclear. I find that the treatment of NSA's secured claim under the TIC Plan is not its indubitable equivalent.

*In re Orchards Vill. Invs.*, 2010 Bankr. LEXIS 48, 50-53 (Bankr. D. Or. Jan. 8, 2010).

The interest rate for the Note under the plan should be 12% and some principal should be paid over time (rather than in a balloon payment) because of the higher risk from Bay Area's loan being secured by a second trust deed. *See In re N. Valley Mall, LLC*, 432 B.R. 825, 835 (Bankr. C.D. Cal. 2010). In *N. Valley Mall*, the Court found that an interest rate of 11.18% for a note secured by second deed of trust was reasonable because the expert testifying to that rate made "some reasonable attempt to recognize that the level of risk changes depending upon whether a lender is at the 66% mark on the collateral, or the 99% mark." *Id.* The Plan proposes an interest rate of 6%, which does not take into account the actual risk of the loan, so confirmation of the Plan must be denied. *In re Seasons Partners, LLC*, 439 B.R. 505 (Bankr. D. Ariz. 2010) (If a plan "proposes an interest rate below the 'range of prevailing market rates for loans of comparable risk and duration' or which does not take into account the actual risk of that loan, confirmation must be denied").

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

1    Also, the appropriate term for a note with an original term of six months is one year,

2    particularly in this economic environment. *See In re Lighthouse Lodge, LLC*, 2010 Bankr.

3    LEXIS 4574, 28-29 (Bankr. N.D. Cal. Dec. 14, 2010) ("The Debtor cannot prove it can make

4    all the payments required under its plan. Moreover, if the Debtor fails to make those payments,

5    ORIX must rely solely on the value of the property securing its claim. . . .  On this record, the

6    court cannot conclude that ORIX would be adequately protected under 11 U.S.C. § 361 over the

7    nearly two year life of the plan. The risk remains that the Lighthouse Lodge's value may fall

8    before the Debtor can sell or refinance the property. Under the circumstances, the court finds the

9    Debtor's Plan does not meet the fair and equitable standard.").  Thus, the Plan fails because it

10    does not meet the requirements of 11 U.S.C. § 1129(b) for Bay Area's Secured Claim.

11                                              **IV.**

12                                    **CONCLUSION**

13    Accordingly, Bay Area respectfully requests that based upon the foregoing, the Court

14    deny approval of the proposed Plan, or in the alternative, order the treatment of Bay Area's

15    secured claim to provide for payment of its Secured Claim as of the Effective Date at an annual

16    interest rate of 12% for a term of 1 year with amortization over 30 years payable monthly and

17    the balance of the total amount due payable at the end of such 1 year period, and grant such

18    other relief that is just and proper.

19

20    Dated: August 17, 2011                  SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE

21                                            A Professional Law Corporation

22                                            By: _____

23                                            Barry R. Gore
                                              Counsel Bay Area Financial Corporation

24

25

26

27

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

# DECLARATION OF VINCENT J. LOMBARDO

I, Vincent J. Lombardo, declare as follows:

1.      I am the Secretary and General Counsel to Bay Area Financial Corporation, ("Bay Area"). I have personal knowledge of the following, or have gained such knowledge from my review of the records of the Bay Area, which are obtained, created and maintained in the ordinary course of business, and if called as a witness, could and would competently testify thereto.

2.      I submit this declaration in support of the Objection Of Bay Area Financial Corporation To Debtor's Chapter 11 Plan.

3.      On December 22, 2010 (the "Petition Date"), the Chapter 11 Debtor and Debtor in Possession, Suzanne Frank Gerbasi, ( "Frank" or "Debtor"), filed her voluntary petition under chapter 11 of Title 11 of the United StateCode.

4.      The Debtor's bankruptcy schedules reflect that her bankruptcy estate includes real property commonly known as 1422 Abbott Kinney Blvd., Venice, California 90291 (the "Property"), and there are three deeds of trust against the Property in favor of the following parties in the following order of priority: (1) Zions Bank; (2) Bay Area; and (3) James M. Landon.

5.      The Debtor executed that certain Optional Advance Note ("Note") to Bay Area for a term of only 6 months at a non-default interest rate of 5% over the prime rate of interest, so nondefault interest was 8.25% prior to the Petition Date. The Note provides for default interest of 8% over prime, so default interest has been 11.25% for purposes of calculating Bay Area's claim. Bay Area also received the "Deed of Trust and Assignment of Rents and Request for Special Notice" ("Deed of Trust"). Bay Area filed its proof of claim in this case on April 13, 2011. A true and correct copy of its proof of claim is attached hereto as Exhibit "A." True and correct copies of the Note and Deed of Trust are included in that proof of claim. Prior to the Petition Date, the Debtor defaulted under the

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

1   Note, and the Note became due and payable in full.

2        6.     In its proof of claim, Bay Area explained that its claim ("Secured Claim") as

3   of the Petition Date was $496,141.08 and that its claim continues to accrue, including

4   amounts for default interest and attorneys' fees and costs.  As of August 23, 2011, Bay

5   Area's claim was $501,298.97 (not including attorneys' fees and costs in August of 2011),

6   and it will likely increase such that the amount of its claim as of the effective date of the

7   plan (if a plan is confirmed) would be over $504,000.  The Debtor's plan only provides for

8   Bay Area to receive 6% interest over five years with a balloon payment of principal after

9   five years or the appropriate interest rate required by the Bankruptcy Code, but the Debtor

10   does not specify what that rate should be. Based on my experience representing lenders on

11   making loans on properties that are similar to the Property since 1973, and my research

12   with respect to the Property, including discussions with two hard money lenders, RA Maize

13   Corporation and Capital Lending Resources, Inc., for a second loan on the Property, to give

14   Bay Area the present value of its claim, the rate of interest and term – considering the

15   original terms of the Note – would be 12%-14% payable monthly and 1 year, respectively,

16   with amortization over 30 years (payable monthly and the remainder of principal paid at the

17   end of the 1 year term).  Accordingly, I concluded that Bay Area's claim should earn

18   interest at the rate of least 12%.  Further, if the Debtor insists on retaining ownership of the

19   Property, and if Bay Area's loan is given a one year term (which is appropriate in these

20   circumstances), then a refinance of the Property within one year is very unlikely in this

21   lending environment.

22        7.     The Debtor through counsel represented to Bay Area that (1) prior to the

23   Petition Date and continuing to date, Abbott Kinney Real Estate, Inc., which is wholly

24   owned by the Debtor, leased the Property from the Debtor for the amount of the mortgages

25   secured by the Property (which are held by Zions Bank and Bay Area), taxes and insurance,

26   which is currently $7,522.99 per month; (2) Zions Bank received an assignment of rents

27

Objection of Bay Area Financial Corporation To
Debtor's Chapter 11 Plan

1   from the Property; and (3) James M. Landon did not receive an assignment of rents and has

2   no rights to cash collateral, including the rents from the Property. Since the Petition Date,

3   those rents are agreed to be cash collateral. The Debtor in her schedules states that the

4   value of the Property is $1,600,000.00. Bay Area reserves its rights with respect to the

5   actual value of the Property, the amount of its claim and other objections to the plan.

6         8.    Bay Area and the Debtor negotiated and entered into the Stipulation

7   Regarding Cash Collateral And Adequate Protection ("Stipulation") pursuant to which

8   Zions Bank and Bay Area are to receive (and Bay Area believes they have received)

9   monthly payments from the Debtor from cash collateral. The motion to approve the

10   stipulation was granted in the Court's order [Docket No. 48] entered on March 18, 2011.

11        I declare under penalty of perjury under the laws of the United States of America that

12   the foregoing is true and correct and that this Declaration is executed on August _16_, 2011, at

13   _LOS ANGELES_, California.

15                                                 

16                         Vincent J. Lombardo

EXHIBIT "A"

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    Central District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>SUZANNE FRANK GERBASI | Case Number:<br>2:10-bk-64548-PC |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Bay Area Financial Corporation | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>Christine M. Fitzgerald<br>Smith \| Campbell \| Clifford \| Kearney \| Gore<br>3424 Carson Street, Suite 350, Torrance, CA 90503<br>Telephone number:<br>(310) 542-0111 | Court Claim Number:_____<br>(If known)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>Vince Lombardo<br>Lombardo & Safford<br>12400 Wilshire Blvd., Suite 230, Los Angeles, CA 90025<br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:    $            469,909.80<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.<br><br>Claim continues to accrue. See Attachment. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507 (a)(4).<br><br>☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).<br><br>Amount entitled to priority:<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| 2. Basis for Claim:   note and deed of trust<br>(See instruction #2 on reverse side.) | |
| 3.   Last four digits of any number by which creditor identifies debtor: _____<br>3a. Debtor may have scheduled account as:_____<br>(See instruction #3a on reverse side.) | |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:   ☑ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>Value of Property: $ 1,600,000.00   Annual Interest Rate   See attachment %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,   Claim continues to accrue.<br>if any: $    469,909.80   Basis for perfection:  see attachment<br><br>Amount of Secured Claim: $   469,909.80   Amount Unsecured: $        0.00 | |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | |

| | | |
|---|---|---|
| Date:<br>4/12/2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   *Vince J. Lombardo*<br><br>Vince Lombardo, General Counsel for Bay Area Financial Corporation | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    Central District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>SUZANNE FRANK GERBASI | Case Number:<br>2:10-bk-64548-PC |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Bay Area Financial Corporation**

Name and address where notices should be sent:
Christine M. Fitzgerald
Smith | Campbell | Clifford | Kearney | Gore
3424 Carson Street, Suite 350, Torrance, CA 90503

Telephone number:
(310) 542-0111

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):
Vince Lombardo
Lombardo & Safford
12400 Wilshire Blvd., Suite 230, Los Angeles, CA 90025

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $                469,909.80

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

Claim continues to accrue. See Attachment.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim:    note and deed of trust
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____

    3a. Debtor may have scheduled account as: _____
        (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:    ☑ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:

Value of Property:$  1,600,000.00  Annual Interest Rate    See attachment    %

Amount of arrearage and other charges as of time case filed included in secured claim,    Claim continues to accrue.
if any: $    469,909.80    Basis for perfection:  see attachment

Amount of Secured Claim: $    469,909.80    Amount Unsecured: $        0.00

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Vince Lombardo, General Counsel for Bay Area Financial Corporation | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Attachment to Proof of Claim of
Bay Area Financial Corporation
in *In re Suzanne Frank Gerbasi*
(Case No. 2:10-bk-64548-PC)

Bay Area Financial Corporation (the "Creditor") is a secured creditor in the above-referenced case of Suzanne Frank Gerbasi (the "Debtor").

The Debtor's bankruptcy schedules reflect that her bankruptcy estate includes real property commonly known as 1422 Abbott Kinney Blvd., Venice, California 90291 (the "Property"), and there are three deeds of trust against the Property in favor of the following parties in the following order of priority: (1) Zions Bank; (2) Creditor; and (3) James M. Landon.

Prior to the Petition Date, the Debtor defaulted under the Debtor's note to the Creditor, and the note became due and payable in full.

The Debtor in her schedules states that the value of the Property is $1,600,000.00. The Debtor scheduled the Creditor as holding a fully secured claim in the amount of $488,000 and scheduled Zions with a fully secured claim of $922,000.

Prior to the Petition Date, the Creditor received an assignment of rents from the Property.

The Creditor and the Debtor negotiated and entered into a stipulation ("Stipulation"), pursuant to which Zions Bank and the Creditor will receive monthly payments from the Debtor from cash collateral. The monthly payments are the monthly interest payable to these creditors. A true and correct copy of the motion to approve that stipulation [Docket No. _] is attached as Exhibit A, and a true and correct copy of the order approving the Stipulation is attached as Exhibit B.

As of the Petition Date, the amount of this claim was $496,141.08 (consisting of $469,909.80 in principal, $20,314.95 in interest, $356.83 for late charges, $0.00 for property taxes, and $5,916.33 in other fees). Amounts continue to accrue on this claim for interest and other charges pursuant to the loan documents.

A summary of the claim amount as of April 10, 2010 is set out below:

Principal.......................................$472,801.09
Unpaid interest prior to Petition Date..........$20,671.78 (consisting of $6,677.78 of
                                                           interest, $13,637.17 of
                                                           default interest, and $356.83
                                                           of late fees)
Unpaid interest since Petition Date.............$577.97 (consisting of $0.00 interest,
                                                         $577.97 default interest,
                                                         $0.00 late fees)
Fees and other charges..........................$ 0.00 (incurred prior to Petition Date)

Costs (including attorneys' fees)...............$5,916.33 consisting of $1,000.00 for litigation counsel and $2,891.29 for bankruptcy counsel since the Petition Date, and $2,025.04 in fees of trustee under deed of trust prior to the Petition Date)

Total................................................$499,967.17

Amounts continue to accrue on this claim pursuant to the loan documents between Creditor and the Debtor.

This Proof of Claim is filed to protect the Creditor from forfeiture of its claim. Neither the execution nor the filing of this Proof of Claim is: (a) a waiver or release of the Creditor's rights against any other entity or person liable for all or part of the claim; (b) a consent by the Creditor to the jurisdiction of this Court with respect to any proceeding commenced in this case against or otherwise involving the Creditor; c) a waiver of the right to withdraw the reference with respect to the subject matter of the Proof of Claim, any objection or other proceedings commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving the Creditor; (d) an election of remedy which waives or otherwise affects any other remedy; or (e) an action for purposes of any "one action," anti-deficiency or similar law.

The Creditor expressly reserves its rights to file other proofs of claim or requests for allowance and payment of any administrative expense with respect to the claim set forth herein or otherwise (which proof of claim or request, if so filed, shall not be deemed to supersede this Proof of Claim unless expressly stated therein), to amend or supplement this Proof of Claim in any respect, including with respect to the filing of an amended claim or to file additional proofs of claim for claims not covered by this Proof of Claim.

The Creditor expressly reserves its rights with respect to the claim set forth herein and/or any other claims, causes of action, and choses in action, and the Creditor preserves all rights, notwithstanding anything contained in this Proof of Claim, including, without limitation, to assert its rights against any third party whatsoever.

The Creditor asserts, without limitation, the following additional claims, as to all of which the Creditor expressly reserves and preserves all rights, notwithstanding anything contained in this Proof of Claim, including, without limitation, (i) the right to claim administrative expense priority for any unsecured portion of the claim; (ii) interest, attorneys' fees and costs which continue to accrue and be incurred; (iii) rights to estimate contingent and assert additional claims if contingent claims are estimated and/or liquidated; and (iv) any other claim that the Creditor may have against the Debtor, including but not limited to any claim relating to or incidental to any loans secured by the Property or made by the Creditor to the Debtor.

# EXHIBIT "A"

BARRY R. GORE, ESQ. SBN 143278
CHRISTINE M. FITZGERALD, ESQ. SBN 259014
SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone:  (310) 542-0111
Facsimile:  (310) 214-7254

Bankruptcy Counsel to Creditor Bay Area Financial Corporation

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-bk-64548-PC |
| SUZANNE FRANK GERBASI, | Chapter 11 |
| Debtor and Debtor in Possession. | **MOTION FOR APPROVAL OF STIPULATION REGARDING CASH COLLATERAL AND ADEQUATE PROTECTION** |
| | Date: March 16, 2011<br>Time: 9:30 a.m.<br>Place: 1539 |

**TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS HOLDING THE TWENTY LARGEST UNSECURED CLAIMS, AND ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Peter H. Carroll, United State Bankruptcy Judge, in Courtroom 1539 of the above entitled court located at 255 E. Temple Street, Los Angeles, CA 90012, on Wednesday March 9, 2011 at 9:30 a.m. to consider Bay Area Financial Corporation's ("BAFC") Motion for Approval of Stipulation Regarding Cash Collateral and Adequate Protection (the "Motion"). A true and correct copy of

the fully executed Stipulation Regarding Cash Collateral and Adequate Protection (the "Stipulation") is attached hereto as **Exhibit "A"** and is incorporated herein by this reference.

The Motion is brought pursuant to 11 U.S.C. §§ 105, 361, and 363, and will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Vincent J. Lombardo filed concurrently herewith, all of the papers and records on file, all matters of which this court may properly take judicial notice, and such other evidentiary mattes as may be presented to the Court regarding this Motion.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(f) requires that a written response to be filed and served upon the attorneys for the Debtor at the address set forth in the upper left-hand corner of the first page hereof, and all other interested parties, not later than 14 days prior to the hearing date. The failure to timely file and serve a written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

**WHEREFORE**, respectfully requests that this Court grant the Motion and enter an Order approving the Stipulation and grant such other order and further relief as the Court deems just and proper.

Dated: February ⸺ 2011   SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
             A Professional Law Corporation


             By: *Christine M. Fitzgerald*
              Christine M. Fitzgerald
              Counsel to Bay Area Financial Corporation

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The Debtor and BAFC have entered into the Stipulation, subject to Court approval, pursuant to which the Debtor will pay monthly interest owed to the secured creditors that hold the first and second deeds of trust on certain real property of the Debtor. Those creditors received assignments of the rents on that property prior to the filing of the Debtor's petition. If the Debtor fails to make those payments and fails to timely cure any defaults in these payments, then BAFC will be able to obtain relief from the automatic stay by filing a declaration with the Court and obtaining an order of the Court, as provided in the Stipulation. By the Motion, BAFC seeks approval of the Stipulation.

### II.

### STATEMENT OF FACTS

On December 22, 2010 (the "Petition Date"), the Chapter 11 Debtor and Debtor in Possession, Suzanne Frank Gerbasi, ("Frank" or "Debtor"), filed her voluntary petition under chapter 11 of Title 11 of the United State Code.

The Debtor's bankruptcy schedules reflect that her bankruptcy estate includes real property commonly known as 1422 Abbott Kinney Blvd., Venice, California 90291 (the "Property"), and there are three deeds of trust against the Property in favor of the following parties in the following order of priority: (1) Zions Bank; (2) BAFC; and (3) James M. Landon. As of the Petition Date and continuing to date, the Debtor had not repaid these debts to these creditors. Attached as **Exhibit "B"** is a true and correct copy of the pertinent pages of those schedules.

Prior to the Petition Date, the Debtor defaulted under the Debtor's note to BAFC, and the note became due and payable in full.

The Debtor through counsel represented to BAFC that (1) prior to the Petition Date and continuing to date, Abbott Kinney Real Estate, Inc., which is wholly owned by the Debtor, leased the Property from the Debtor for the amount of the mortgages secured by the Property (which are held by Zions Bank and BAFC), taxes and insurance, which is currently $7,522.99 per month; (2) Zions Bank received an assignment of rents from the Property; and (3) James M. Landon did not receive an assignment of rents and has no rights to cash collateral, including the rents from the Property. Since the Petition Date, those rents are agreed to be cash collateral. The Debtor in her schedules states that the value of the Property is $1,600,000.00.

Prior to the Petition Date, BAFC received an assignment of rents from the Property. Attached hereto as **Exhibit "C"** is a true and correct copy of the "Deed of Trust and Assignment of Rents and Request for Special Notice" entered into by the Debtor and BAFC.

BAFC and the Debtor negotiated and entered into the Stipulation, pursuant to which Zions Bank and BAFC will receive monthly payments from the Debtor from cash collateral. The monthly payments are the monthly interest payable to these creditors. The monthly payment to Zions Bank is $6,122.00, and the monthly payment to BAFC is $4,400.00 pursuant to the Stipulation.

The Stipulation also provides that BAFC can seek relief from the automatic stay if the Debtor fails to timely cure any default in making the payments to BAFC or Zions Bank as required by the Stipulation. The Stipulation is not intended to, and shall not, affect BAFC's rights (a) to seek additional or different adequate protection of its interests, including but not limited to seeking relief from the automatic stay at any time; (b) to object to any Disclosure Statement and/or Plan, if filed, or any other pleading filed in this case; (c) to assert that BAFC is not adequately protected on any basis; or (d) to take any other action in the Debtor's case. Nothing in the Stipulation or herein shall be deemed or construed to revise or change the terms of the loans from BAFC to the Debtor or to constitute consent of BAFC to any action or inaction by the Debtor or delay in the repayment of BAFC's loan to the Debtor in full for any

reason, and with Court approval, the parties may alter or revise the Stipulation from time to time

as they deem appropriate. Additional terms are set forth in the Stipulation (See **Exhibit "A"**).

### III.

### <u>DEBTOR SHOULD BE ALLOWED TO ENTER THE STIPULATION</u>

When cash collateral is received by a debtor, the bankruptcy court has the discretion to

provide for "adequate protection" of those entities that have an interest in the cash collateral.

11 U.S.C. § 363(e). The court may order the granting of replacement liens and may also

require that cash payments be made to such entities. *See, e.g., In re Scottsdale Medical

Pavilion*, 159 B.R. 295 (9th Cir. B.A.P. 1993, *In re JKJ Chevrolet, Inc.*, 190 B.R. 542 (Bankr.

E.D.Va. 1995).

11 U.S.C. § 363(a) defines "cash collateral" as cash, negotiable instruments,

documents, title, securities, deposit accounts, or other cash equivalents whenever acquired in

which the estate and an entity other than the estate have an interest. Cash collateral also

includes any proceeds, products, offspring, rents, or profits of property subject to a security

interest as provided in § 552(b) of the bankruptcy Code, whether existing before or after the

commencement of a case under Title 11.

A debtor-in-possession may not use, sell, or lease cash collateral unless each entity that

has an interest in such cash collateral consents or the court, after notice and a hearing,

approves. 11 U.S.C. § 363(b)(2); *In re Scottsdale Medical Pavilion*, 159 B.R. 295, 297 (9th

Cir. B.A.P. 1993). Pursuant to § 363(e), at any time, on request of any person or entity that has

an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the

trustee, the Court, with or without a hearing, shall prohibit or condition such use, sale, or lease

as is necessary to provide adequate protection of such interest.

Adequate protection is defined in 11 U.S.C. § 361 as follows:

> When adequate protection is required under Section 362, 363, or 364 of this title,
> of an interest of an entity in property, such adequate protection may be provided
> by - - (1) requiring the trustee to make a cash payment or periodic cash payments
> to such entity, to the extent that the stay under Section 362 of this title, use sale,

1  or lease under Section 363 of this title, or any grant of a lien under Section 364
2  of this title results in a decrease in the value of such entity's interest in such
   property; (2) Providing to such entity an additional or replacement lien to the
3  extent that such stay, use, sale, lease or grant results in a decrease in the value of
   such entity's interest in such property; or (3) Granting such other relief, other
4  than entitling such entity to compensation allowable under Section 503(b)(1) of
5  this title as an administrative expense, as will result in the realization of such
   entity of the indubitable equivalent of such entities interest in such property.

6

7  Because Zions and BAFC received prepetition assignments of rents from the Property,

8  the rents received by the Debtor for the Property are cash collateral of Zions Bank and BAFC

9  and should be paid to them as provided in the Stipulation.

10                                      IV.

11                                 CONCLUSION

12         Based on the foregoing, Debtor respectfully requests that the Court grant the Motion

13  and enter an order approving the Stipulation and granting such other and further relief as the

14  court may deem just and proper.

15  Dated: February 10, 2011           SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE

16                                      A Professional Law Corporation

17
                                        By: *Christine M. Fitzgerald*
18                                          Christine M. Fitzgerald
                                            Counsel Bay Area Financial Corporation
19

20

21

22

23

24

25

26

27

28

### DECLARATION OF VINCENT J. LOMBARDO

I, Vincent J. Lombardo, declare as follows:

1.       I am the Secretary and General Counsel to Bay Area Financial Corporation, ("BAFC"). I have personal knowledge of the following, or have gained such knowledge from my review of the records of the BAFC, which are obtained, created and maintained in the ordinary course of business, and if called as a witness, could and would competently testify thereto.

2.       A true and correct copy of the fully executed Stipulation Regarding Cash Collateral and Adequate Protection ("Stipulation") by and between BAFC and the Chapter 11 Debtor, and Debtor in Possession, Suzanne Frank Gerbasi (the "Debtor") that is attached hereto as Exhibit "A". I have reviewed and am familiar the Stipulation.

3.       Prior to the Petition Date, the Debtor defaulted under the Debtor's note to BAFC, and the note became due and payable in full.

4.       The Debtor through counsel represented to BAFC that (1) prior to the Petition Date and continuing to date, Abbott Kinney Real Estate, Inc., which is wholly owned by the Debtor, leased the Property from the Debtor for the amount of the mortgages secured by the Property (which are held by Zions Bank and BAFC), taxes and insurance, which is currently $7,522.99 per month; (2) Zions Bank received an assignment of rents from the Property; and (3) James M. Landon did not receive an assignment of rents and has no rights to cash collateral, including the rents from the Property. Since the Petition Date, those rents are agreed to be cash collateral. The Debtor in her schedules states that the value of the Property is $1,600,000.00. Attached as Exhibit "B" is a true and correct copy of the pertinent pages of those schedules.

5.       Prior to the Petition Date, BAFC received an assignment of rents from the Property. Attached hereto as Exhibit "C" is a true and correct copy of the "Deed of Trust and Assignment of Rents and Request for Special Notice" entered into by the Debtor and

BAFC.

6.     BAFC and the Debtor negotiated and entered into the Stipulation, pursuant to which Zions Bank and BAFC will receive monthly payments from the Debtor from cash collateral. The monthly payments are the monthly interest payable to these creditors. The monthly payment to Zions Bank is $6,122.00 (which amount was provided by the Debtor's counsel), and the monthly payment to BAFC is $4,400.00 pursuant to the Stipulation.

7.     The Stipulation also provides that BAFC can seek relief from the automatic stay if the Debtor fails to timely cure any default in making the payments to BAFC or Zions Bank as required by the Stipulation. The Stipulation is not intended to, and shall not, affect BAFC's rights (a) to seek additional or different adequate protection of its interests, including but not limited to seeking relief from the automatic stay at any time; (b) to object to any Disclosure Statement and/or Plan, if filed, or any other pleading filed in this case, (c) to assert that BAFC is not adequately protected on any basis; or (d) to take any other action in the Debtor's case. Nothing in the Stipulation or herein shall be deemed or construed to revise or change the terms of the loans from BAFC to the Debtor or to constitute consent of BAFC to any action or inaction by the Debtor or delay in the repayment of BAFC's loan to the Debtor in full for any reason, and with Court approval, the parties may alter or revise the Stipulation from time to time as they deem appropriate. Additional terms are set forth in the Stipulation (See Exhibit "A").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on February 9, 2011, at _____ California.

Vincent J. Lombardi

EXHIBIT "A"

BARRY R. GORE, ESQ. SBN 143278
CHRISTINE M. FITZGERALD, ESQ. SBN 259014
SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation424 Carson Street, Suite 350
Torrance, California 90503
(310) 542-0111 Telephone
(310) 214-7254 Facsimile

Bankruptcy Counsel to Creditor
Bay Area Financial Corporation

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-bk-64548-PC |
| SUZANNE FRANK GERBASI, | Chapter 11 |
|      Debtor and Debtor in Possession. | **STIPULATION REGARDING CASH COLLATERAL AND ADEQUATE PROTECTION** |
| | NO HEARING REQUIRED |

Through counsel, Bay Area Financial Corporation ("BAFC") and Suzanne Frank Gerbasi, the debtor and debtor-in-possession (the "Debtor"), agree as follows:

I.

RECITALS

A.     On December 22, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.     Among the assets of the Debtor's bankruptcy estate is the real property commonly known as 1422 Abbott Kinney Blvd., Venice, California 90291 (the "Property"). As

1

stated in the Debtor's bankruptcy schedules, there are three deeds of trust against the Property, in favor of the following parties and in the following order of priority:

(1)    Zions Bank;

(2)    BAFC;

(3)    James M. Landon.

C.    As of the Petition Date and continuing to date, the Debtor had not repaid the monetary obligations owed to the parties identified in the previous paragraph.

D.    Prior to the Petition Date and continuing to date, Abbott Kinney Real Estate, Inc., which is wholly owned by the Debtor, has leased the Property from the Debtor for the amount of the mortgages secured by the Property (which are held by Zions Bank and BAFC), taxes and insurance, which is currently $7,522.99 per month; since the Petition Date, those rents are agreed to be cash collateral.    The Debtor listed the value of the Property in her Schedules of Assets and Liabilities ("Schedules") as $1,600,000.

E.    Zions Bank and BAFC each received an assignment of rents from the Property. James M. Landon did not receive an assignment of rents and has no rights to cash collateral, including the rents from the Property.

F.    BAFC filed its *Notice of Non-Consent of Use of Cash Collateral* [Docket No. 9] on January 5, 2011.

G.    The parties have reached terms under which BAFC shall receive periodic payments to protect its interest and which shall govern the parties' rights if the Debtor defaults in making the payments described below to BAFC or Zions Bank.

II.

AGREEMENT.

1.    Starting on the day after entry of the order approving this Stipulation, and continuing no later than ten (10) days following the beginning of each calendar month thereafter, the Debtor shall make monthly adequate protection payments to Zions Bank in the

amount of $6,122.99. The Debtor shall mail payments to Zions Bank at the following address, in connection with loan no. * * * -* * * * * * * * * *29002: Zions Bank, PO Box 2582 Salt Lake City, UT 84125.

2.      Starting on the day after entry of the order approving this Stipulation, and continuing no later than ten (10) days following the beginning of each calendar month thereafter, the Debtor shall make monthly adequate protection payments directly to BAFC in the amount of $4,400, so as to be received by BAFC on or before the tenth (10th) day of each month.

3.      The Debtor shall provide to BAFC, through its counsel identified below, written evidence by email of each payment made to Zions Bank pursuant to this stipulation no later than ten (10) days following the beginning of each month.

4.      In the event of non-payment of any adequate protection payment described herein by the tenth (10th) day of any month, BAFC shall transmit a Notice of Default to the Debtor by email at_____ and by email to the Debtor's counsel identified below.   In the event that the Debtor fails to cure any such default within ten (10) days of service of the related Notice of Default, the Bankruptcy Court shall be authorized to grant full and immediate relief from the automatic stay in favor of BAFC upon filing and service of a declaration by BAFC's counsel confirming such a failure to cure the default within those ten days.

5.      Nothing contained in this Stipulation or the order approving this Stipulation shall be deemed or construed (a) to waive, reduce or otherwise diminish the rights of the Lender to seek additional or different adequate protection of its interest under the Note and Deed of Trust or to take any other action in this Chapter 11 case including seeking relief from stay at an earlier date or (b) to be an admission that the Lender is adequately protected.

6.      This Stipulation shall be valid and binding on, and will inure to the benefit of, the successors and assigns of the Debtor and Lender and any Chapter 7 trustee (if one is appointed in the Debtor's case), notwithstanding any conversion of this case to chapter 7.

3

7.    Other than as expressly set forth herein, BAFC does not consent to any use of
cash collateral.

8.    This Stipulation shall be subject to the approval of the Bankruptcy Court.

February
January ___, 2011                    SMITH | CAMPBELL | CLIFFORD | KEARNEY |
                                     GORE, A Professional Corporation

                                     By:_____
                                        Barry R. Gore
                                        Christine M. Fitzgerald
                                        cfitzgerald@scckg.com
                                     Counsel to Bay Area Financial Corporation


January 28 2011                      LAW OFFICES OF JONATHAN HAYES

                                     By:_____
                                        M. Jonathan Hayes
                                        jhayes@HayesBKLaw.com
                                     Counsel to Suzanne Frank Gerbasi, Debtor and
                                     Debtor-in-Possession

4

# EXHIBIT "B"

Case 2:10-bk-64548-PC   Doc 76   Filed 08/16/11   Entered 08/16/11 16:47:01   Desc
Main Document   Page 34 of 38
Case 2:10-bk-64548-PC   Claim 7-1 Part 2   Filed 04/13/11   Desc part 2   Page 2 of
Case 2:10-bk-64548-PC   Doc 24   Filed 02/10/11   Entered 02/10/11 14:27:42   Desc
Main Document   Page 15 of 29

B6A (Official Form 6A) (12/07)

In re   Suzanne Frank Gerbasi                               Case No.   2:10-bk-64548-PC
                                     Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Commercial Property at 1422 Abbott Kinney Blvd., Venice, CA 90291<br>In Forclosure | Fee simple | - | 1,600,000.00 | 1,560,000.00 |
| SFR at 70754 Fairway Drive, Rancho Mirage, CA 92270 | Fee simple | - | 950,000.00 | 1,000,000.00 |
| Investment Rental Property at 616 Milwood Avenue, Venice, CA 90291<br>3 Cottages - Debtor on Title Only - owns 1/3 | 33% | - | 650,000.00 | 675,000.00 |
| 2325 Frey Ave., Venice CA 90291<br>(Debtor is Co-signer on 1st Trust Deed) Owns 10% - Amount listed is 100% of value. Other 90% owned by Eyal Hollinger | 10% | - | 1,175,000.00 | 1,289,000.00 |
| Note: All properties held in the name of Suzanne Frank-Gerbasi Trust | | - | 0.00 | 0.00 |

                                     Sub-Total >      4,375,000.00      (Total of this page)

                                           Total >      4,375,000.00

 __0__   continuation sheets attached to the Schedule of Real Property

                                           (Report also on Summary of Schedules)

B6D (Official Form 6D) (12/07)

In re    Suzanne Frank Gerbasi                                          Case No.   2:10-bk-64548-PC
_____
                              Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" , include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxx30-07 Bay Area Financial 12400 Wilshire Blvd., Suite 230 Los Angeles, CA 90025 | | | Second Mortgage Commercial Property at 1422 Abbott Kinney Blvd., Venice, CA 90291 In Forclosure | | | | | |
| | | | Value $        1,600,000.00 | | | | 488,000.00 | 0.00 |
| Account No. Bay Area Financial Corp. c/o UTLS Default Services, LLP P.O. Box 5899 Irvine, CA 92616 | | | Duplicate | | | | | |
| | | | Value $        0.00 | | | | 0.00 | 0.00 |
| Account No. xxxxxxxxx5003 Chase Finance P.O. Box 78067 Phoenix, AZ 85062-8068 | | | 2006 Mercedes CLS55 AMG (to be returned) | | | | | |
| | | | Value $        36,000.00 | | | | 46,000.00 | 10,000.00 |
| Account No. xxxxx3705 IndyMac Mortgage Services P.O. Box 78826 Phoenix, AZ 85020-8826 | | | First Mortgage SFR at 70754 Fairway Drive, Rancho Mirage, CA 92270 | | | | | |
| | | | Value $        950,000.00 | | | | 1,000,000.00 | 50,000.00 |
| _2_    continuation sheets attached | | | Subtotal (Total of this page) | | | | 1,534,000.00 | 60,000.00 |

Case 2:10-bk-64548-PC   Doc 76   Filed 08/16/11   Entered 08/16/11 16:47:01   Desc
Main Document       Page 36 of 38
Case 2:10-bk-64548-PC   Claim 7-1 Part 2   Filed 04/13/11   Desc  part 2   Page 4 of
Case 2:10-bk-64548-PC   Doc 10   Filed 02/05/11   Entered 01/05/11 18:37:41   Desc
Case 2:10-bk-64548-PC   Doc 24   Filed 02/10/11   Entered 02/10/11 14:27:42   Desc
Main Document       Page 17 of 29

B6D (Official Form 6D) (12/07) - Cont.

In re   Suzanne Frank Gerbasi                                   Case No.   2:10-bk-64548-PC
_____                                          _____
                    Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | HWJC | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| **Account No.** <br><br> Jacek Terpinsky <br> 1194 Huron Road <br> North Brunswick, NJ 08902 | | - | Second Mortgage <br><br> 2325 Frey Ave., Venice CA 90291 (Debtor is Co-signer on 1st Trust Deed) Owns 10% - Amount listed is 100% of value. Other 90% owned by Eyal Hollinger <br> Value $      1,175,000.00 | | | | 250,000.00 | 0.00 |
| **Account No.** <br><br> James M. Landon <br> 125 Cove Court <br> Roseville, CA 95747 | | | Third Mortgage <br><br> Commercial Property at 1422 Abbott Kinney Blvd., Venice, CA 90291 In Foreclosure <br><br> Value $      1,600,000.00 | | | | 150,000.00 | 0.00 |
| **Account No.** <br><br> Kinecta FCU <br> P.O. Box 172 <br> Manhattan Beach, CA 90267 | | - | First Mortgage <br><br> Investment Rental Property at 616 Milwood Avenue, Venice, CA 90291 3 Cottages - Debtor on Title Only - owns 1/3 <br> Value $       650,000.00 | | | | 675,000.00 | 25,000.00 |
| **Account No.** xxxxxx5372 <br><br> Mercedes Benz <br> P.O. Box 9001680 <br> Louisville, KY 40290 | X | - | 2008 Mercedes-Benz CLK 550 <br><br><br> Value $        23,000.00 | | | | 15,000.00 | 0.00 |
| **Account No.** <br><br> Raphael Hollinger <br> 1332 Amherst Ave. <br> Los Angeles, CA 90025 | | | Third Mortgage <br><br> 2325 Frey Ave., Venice CA 90291 (Debtor is Co-signer on 1st Trust Deed) Owns 10% - Amount listed is 100% of value. Other 90% owned by Eyal Hollinger <br> Value $      1,175,000.00 | | | | 375,000.00 | 114,000.00 |

Sheet  1  of  2  continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page)

| 1,465,000.00 | 139,000.00 |
|---|---|

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re    Suzanne Frank Gerbasi                              Case No.    2:10-bk-64548-PC
_____                         _____
                        Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| **Account No.** Richard Rogg c/o PLM Lender Services, Inc. 46 N. Second Street Campbell, CA 95008 | X | | | | First Mortgage 2325 Frey Ave., Venice CA 90291 (Debtor is Co-signer on 1st Trust Deed) Owns 10% - Amount listed is 100% of value. Other 90% owned by Eyal Hollinger | | | | | |
| | | | | | Value $        1,175,000.00 | | | | 664,000.00 | 0.00 |
| **Account No. xx0501** Thunderbird Property Owners Assoc. Desert Resort Management P.O. Box 14387 Palm Desert, CA 92255 | | - | | | Homeowners Association 70754 Fairway Drive, Rancho Mirage, CA 92270 | | | | | |
| | | | | | Value $        950,000.00 | | | | 0.00 | 0.00 |
| **Account No. xxx-xxxxx-xxxxxxx-9002** Zions Bank P.O. Box 26304 Salt Lake City, UT 84125 | | - | | | First Mortgage Commercial Property at 1422 Abbott Kinney Blvd., Venice, CA 90291 | | | | | |
| | | | | | Value $        1,600,000.00 | | | | 922,000.00 | 0.00 |
| **Account No.** | | | | | | | | | | |
| | | | | | Value $ | | | | | |
| **Account No.** | | | | | | | | | | |
| | | | | | Value $ | | | | | |

Sheet  __2__  of  __2__  continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | Subtotal (Total of this page) | 1,586,000.00 | 0.00 |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | 4,585,000.00 | 199,000.00 |

# EXHIBIT "C"